# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **MOTLALEPULA MODISE, TIRELO MMOLAWA, MORWESI MMOLAWA, individually and on behalf of others similarly situated,** | : | **CIVIL ACTION NO. 3:20-cv-000765-KAD** |
| | : | |
| | : | |
| | : | |
| | : | |
| **PLANTIFFS** | : | |
| | : | |
| **V.** | : | **October 2, 2020** |
| | : | |
| **CAREONE HEALTH SERVICES, LLC and ABEL N. OSAGIE,** | | |
| | | |
| **DEFENDANTS** | | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

LAW OFFICE OF NITOR V. EGBARIN, LLC
Nitor V. Egbarin, Esq. (ct05114)
*Attorney for Plaintiffs*, Individually and on Behalf of All
Other Persons Similarly Situated
100 Pear Street, 14th Floor
Hartford, CT 06103-3007
negbarin@aol.com
nitoregbarin@gmail.com
Tel: 860-249-7180
FAX: 860-408-1471

11

I

**TABLE OF CONTENTS**

PAGE

TABLE OF CONTENTS……................................................................. ii

TABLE OF AUTHORITIES…………………....…………………..... iii

I. INTRODUCTION …………….......................................... 1

II. SUMMARY OF FACTS…………..................................…….…..... 2

III. LAW AND DAMAGES........................................................ 5

    A. Class and Collectives Can be Certified....…….……..... 5

        1. Class Definition……………………………….. 7

        2. Numerosity…………………………………. 9

        3. Commonality………………………………….. 9

        4. Typicality…………………………………… 11

        5. Adequacy of Representation………………….. 12

        6. Predominance……………………………….. 12

        7. Superiority……………………………………….. 14

    B. Court Should Appoint Class Counsel………………… 14

    C. Liability is Established........................................................ 15

    D. Damages………..………………….…………….……… 17

        1. Unpaid Wages...............................………….…… 17

        2. FLSA Liquidated Damages …………………… 24

        3. CMWA Penalty Damages………….................…… 25

IV. SUMMARY OF DAMAGES………………………………..… 28

V. CONCLUSION ………………………………………….…….…... 30

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE**

*Abramovitz v. Ahern, 96 F.R.D. 208, 212 (D. Conn. 1982)*…………………….……      8

*Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997)*……………………….      6,7,14

*Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79,*
*238 F.R.D. 82 (S.D.N.Y. 2006)* ………………………………………………………      6

*Au Bon Pain Corp., v. Artect, Inc., 653 F.3d 61, 65, (2d Cir. 1981)*………………      5

*Barfield v. N.Y.C. Health and Hosps. Corp., 537 F.3d 132, 150 (2d Cir.2008)*….      24

*Butler v. Hartford Technical Inst., 704 A.2d 222, 230 (Conn.1997)*……………..      26

*Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483*
*(2d Cir. N.Y. 1995).* ………………………………………………………………      9

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
*502 F.3d 91, 104 (2d Cir.2007)*………………………………………………………      7,9

*Davis v. Hutchins, 321 F.3d 641, 648–49 (7th Cir. 2003)*..………………………...      5

*Darowski v. Wojewoda, 2017 U.S. Dist. LEXIS 208122, \*14*
*(D.Conn. Dec. 19, 2017)*………………………………………………………………..      8

*Easterly v. Tri–Star Transport, 2015 WL 337565, at \*2 (S.D.N.Y. Jan. 23, 2015)*..      27

*Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)* …………………………….      5

*Grochowski v. Phoenix Const., 318 F.3d 80, 87 (2d Cir. 2003)*…………………….      17

*Harty v. Cantor Fitzgerald & Co., 881 A.2d 139, 154 (Conn.2005)*……………...      26

*Havrilla v. United States, 125 Fed. Cl. 454, 464 (2016)*…………………………….      22

*Hernandez v. P.K.L. Corp., No. 12–cv–2276,*
*2013 WL 5129815, at \*6 (E.D.N.Y. Nov. 23, 2013)*……………………………..      26

*Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1217 (11th Cir. 2001)*……..…      6

*Hoffmann-LaRoche, Inc. v. Sperling, 493 U.S. 165, 170 (1989).* …………..........      6

*Hypolite v. Health Care Servs. of New York Inc.*₁₄

*256 F. Supp. 3d 485, 489 (S.D.N.Y) 2017*........................................................... 10,11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
*No. 05MD1720MKBJO, 2019 WL 6875472, at \*31*
*(E.D.N.Y. Dec. 16, 2019)*.................................................................................. 8

*In re Petrobras Sec., 862 F.3d 250, 269 (2d Cir. 2017)*................................... 8

*In re Visa Check/Mastermoney Antitrust Litig., 280 F.3d 124, 132-33*
*(2d Cir. 2001)*...................................................................................................... 6,12

*In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 958*
*(9th Cir.2009*........................................................................................................ 7

*Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir. 1996)...................................... 8

*Karic v. Major Auto. Cos. Inc.,* 992 F.Supp.2d 196, 203–04 (E.D.N.Y.2014)...... 25

*Kinkead v. Humana at Home, Inc.,* No. 3:15-CV-01637
2020 WL 1531295, at \*6 (D. Conn. Mar. 31, 2020)............................................. 17,28

*Lin v. Brennan, 2011 U.S. Dist. LEXIS 132025, \*14*
*(D. Conn. Nov. 15, 2011)*.................................................................................... 8

*Morales v. Cancun Charlie's Rest.,* No. 3:07-CV-1836,
2010 WL 7865081, at \*8-9 (D. Conn. Nov. 23, 2010)........................................ 25,27

*Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir.2002)*.............. 7,11

*Mullins v. Direct Digital, LLC, 795 F.3d 654, 662 (7th Cir. 2015)*.......... 8

*Myers v. Hertz Corp., 624 F.3d 537, 547–48 (2d Cir. 2010)*...................... 6,7,9,10,11

*Perez v. Platinum Plaza 400 Cleaners, Inc.,* No. 12 CIV. 9353 PAC,
2015 WL 1881080, at \*4 (S.D.N.Y. Apr. 24, 2015)............................................ 24,26

*Powell v. Carey Int'l, Inc., 514 F. Supp. 2d 1302, 1318 (S.D. Fla. 2007)*.... 17

*Rappaport v. Katz, 62 F.R.D. 512, 513 (S.D.N.Y.1974)*............................. 8

*Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 64 (2d Cir.1997)*.... 23,24

*Robidoux v. Celani, 987 F.2d 931 (2d Cir. 1993)*........................................ 9,11

*Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010)............ 20

*Shortt v. New Milford Police Dept., 562 A.2d 7, 15 & n.13 (Conn.1989)*... 26

*Solis v. Cindy's Total Care, Inc.*, No. 10 CIV. 7242 PAE,
2012 WL 28141, at *23 (S.D.N.Y. Jan. 5, 2012)…………………………..        24

*Tapia v. Mateo,* 96 F. Supp. 3d 1, 5 (D. Conn. 2015)…………………..        24,25,26

*Walling v. Youngerman-Reynolds Hardwood Co.,*
*325 U.S. 419, 424 (1945)*……………………………………………………..        17

*Wei Yan Yan v. 520 Asian Rest. Corp.,* No. 13–cv–2417
2014 WL 7177259, at *9 (S.D.N.Y. Dec. 17, 2014)…………………………        26

*Wellington v. Duncan*, No. 3:13–cv–1179 (JBA) (D.Conn. Jul. 2, 2014)……        26

*Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635,
2011 WL 2022644, at *7 (S.D.N.Y. May 2, 2011)…………………………..        26

*Yu Y. Ho v. Sim Enters.,* 2014 WL 1998237, at *18–19
(S.D.N.Y. May 14, 2014)………………………………………………………        27

## STATUTES

29 U.S.C. § 216 ………………………… …………………………....        passim

C.G.S. § 31-66 ...........................................................................        passim

C.G.S. § 31-68 ...................................................................        passim

G.S. § 31-76 ...................................................................        passim

## CODE OF FEDERAL REGULATIONS

29 C.F.R. § 552.110....………………………………………………..        passim

29 C.F.R. § 785.19....………………………………………………..        passim

29 C.F.R. § 785.22....………………………………………………...        passim

## FEDERAL RULES OF CIVIL PROCEDURE

RULE 23 ………………………….........................………….……..        passim

11

The Plaintiffs, MOTLALEPULA MODISE, TIRELO MMOLAWA, and MORWESI MMOLAWA, individually and on behalf of all others similarly situated, (the "Class"), hereby request that judgment by default be entered against Defendant in this matter, CAREONE HEALTH SERVICES, LLC, pursuant to the Federal Rules of Civil Procedure, Rule 55(b).

Plaintiffs further request that this Court determine and order pursuant to Rule 23(c) that the requirements of Rule 23(a) have been met.

In support of this request, Plaintiffs rely upon the record in this case, the affidavits, declaration of counsel and submit this memorandum of law.

## I.  INTRODUCTION

Plaintiffs bring claims under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") on behalf of themselves and all other Home Health Aides[1] ("HHAs") who currently and formerly worked for Defendants in Connecticut from January 13, 2017 to the present date. See, Complaint ("Compl."), ¶ 58. Plaintiffs and the other HHAs allege that the class members  are similarly situated in that they were all subject to Defendants' common plan or practice of designating them as exempt from the overtime requirements of FLSA, when in fact their work is not exempt. Compl. ¶ 59. See also, Compl. ¶¶ 67-69.

 Plaintiffs and the other HHAs also bring claims under the Connecticut Wage Act, C.G.S. §§31-58 et seq., and Rule 23 of the Federal Rules of Civil Procedure, for themselves and on behalf of a class consisting of all HHAs in Connecticut during the period beginning January 13, 2017 until the present date ("Class Period"). Compl. ¶ 60. See also, Compl. ¶¶ 70-72. Plaintiffs seek Class certification for Connecticut law claims under Fed. R. Civ. P. 23 (a) and Fed. R. Civ.

---

[1] Home Health Aides, are also known and referred to as "Caregivers." See, Complaint, ¶ 1. Also see Affidavit of Motlalepula Modise,  ¶ 4; Affidavit of Tirelo Mmolawa, ¶ 4 and; Affidavit of Morwesi Mmolawa, ¶ 4, all stating "Defendants hired Plaintiffs and assigned each of them to be the "live-in caregiver" for Defendants' clients."

P. 23 (b)(3) because all the requirements of the Rules are met. Plaintiffs allege that Defendants employ approximately 100 HHAs who currently and formerly worked at least one 24-hours overnight shift in Connecticut in the Class Period. See, Compl. ¶ 62.

Summons and the complaint (ECF No. 1) were served upon the Defendant, CareOne Health Services, LLC ("CareOne") on June 9, 2020 and the execution of the summons was filed on June 12, 2020 (ECF No. 7). An answer to the complaint was due 21 days after the date of service. However, Defendant, CareOne failed to file a pleading or motion permitted by law within the time allowed by law for responding, and default was entered against CareOne on September 2, 2020. (ECF No. 21). Plaintiffs and the other HHAs now seek a default judgment against Defendant, CareOne.

## II. SUMMARY OF FACTS

The following facts which are alleged in the complaint (see, Compl. ¶¶ 24-43), are established for purposes of this motion for default judgment. Defendants hired Plaintiff, Ms. Modise to work as a Home Health Aide[2] on approximately May 1, 2017. Defendants hired Plaintiff, Mr. Mmolawa to work as a Home Health Aide on approximately March 2, 2017. Defendants hired Plaintiff, Ms. Mmolawa to work as a Home Health Aide on approximately January 13, 2017. Defendants employ approximately 100 or more Home Health Aides in

---

[2] Plaintiffs and all others similarly situated are domestic service workers, which is defined under the Code Of Federal Regulations, 29 C.F.R. § 552.3 ("The term domestic service employment means services of a household nature performed by an employee in or about a private home (permanent or temporary). The term includes services performed by employees such as companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use. This listing is illustrative and not exhaustive.") (Emphasis added). Although Plaintiffs and all other similarly situated employees are referred to in this action as "home health aides" Defendants however prefer to refer to their employees as Personal Care Attendant ("PCA"). HHAs and PCAs are the same positions under the FLSA (see, *id*), with the same job description/duties as alleged in the complaint. See, Compl. ¶ 29. HHAs or PCAs are also known as "Caregivers." See n 1, above.

Connecticut during this claim period beginning January 13, 2017 until the present date. Compl. ¶¶ 24-27.

Defendants assign Plaintiffs and other HHAs to be "live-in" HHAs for their clients. Defendants assign their HHAs non-exempt duties including: activities of daily living, including cooking for and serving breakfast, lunch and dinner to customer; bathing customer as needed; assisting customer change clothing and underwear/diaper during the day and night as needed; helping customer put on and take off customer's clothes every day; sitting with customer and watch customer eat food and watch television and; physically watching over customer at all times and remaining within eye and earshot of customer, including placing an electronic monitoring device in customer's room to monitor to customer at all times including at nighttime; assisting customer with incontinence; assisting customer with personal hygiene; assisting customer with taking medication and; escorting customer for medical appointments. Compl. ¶¶ 28-29.

Defendants paid Plaintiffs and all of their live-in HHAs during the period of the claim a daily rate. For example, Defendants paid Plaintiff Ms. Modise a daily rate of $140.00. Defendants also paid Plaintiff Mr. Mmolawa a daily rate of $140.00. Defendants also paid Plaintiff Ms. Mmolawa a daily rate of $140.00. Compl. ¶¶ 30-33. Defendants pay all their live-in HHAs $140 per diem. See, Egbarin Declaration ¶ 14.

Defendants informed Plaintiffs and all of their HHAs that they were allowed eight hours of sleep time and three one-hour meal breaks per day. This schedule resulted in a minimum of thirteen hours per day of work. Over a 7-day work week, this schedule resulted in a minimum of 91 hours of work time, 51 of which was overtime. Compl. ¶¶ 34-35.

Defendants paid Plaintiffs and all of their HHAs a flat daily rate for their work and did

not calculate and pay overtime premiums as required by 29 C.F.R. 778.112. For example, during a typical week, Plaintiffs worked as a live-in HHA for seven (7) days at a rate of $140 per day. According to their assigned schedule, Plaintiffs worked a minimum of 91 hours for a seven day week. Defendants paid each Plaintiff $980 for their work that week. Defendants should have calculated overtime by dividing $980 by 91 hours worked, resulting in a regular rate of $10.77 per hour. Defendants should have paid half that rate, or $5.38 per hour, for each of Plaintiffs' 51 hours of overtime, adding $274.38 to each Plaintiffs' pay for that week. Compl. ¶¶ 36-38.

Instead, Defendants paid Plaintiffs only $980 for that week, and failed to pay each Plaintiff the overtime premiums due under the law, (Compl. ¶¶ 39), resulting in $274.38 of unpaid overtime wages to each Plaintiffs' pay for each week they worked 7 days. The amount in unpaid overtime wage will be different for each week Plaintiffs and other class members worked less than 7 days for the workweek.

In addition, Defendants failed to accurately record all of Plaintiffs' work time, including interruptions during each Plaintiffs' sleep and meal breaks. Defendants provided Plaintiffs and all HHAs with a time sheet, which did not have a place for them to record their interruptions. Compl. ¶¶ 40-41.

In fact, Plaintiffs, and Defendants' other HHAs, were frequently interrupted during their sleep and meal breaks to care for Defendants' clients. Defendants' clients frequently needed to be attended to during the night for such reasons as trips to the bathroom, dementia, insomnia, to monitor clients' medical device such as CPAP or breathing machine with its oxygen tank, or if a client is in hospice, to turn them over every two hours to prevent bed sores. In fact, Defendants' clients frequently interrupted Plaintiffs and other HHAs so much that they were unable to have at least five hours of uninterrupted sleep time per night. Defendants were aware of these sleep

interruptions at night time because Plaintiffs and other HHAs, from time to time, informed Defendants of these interruptions. But Defendants never modified their time sheets or took any other steps to accurately record all hours worked by Plaintiffs and other HHAs. Compl. ¶¶ 42-43.

## III.   LAW AND DAMAGES

Fed. R. Civ. P. 55(b)(2) empowers a district court to enter judgment against an individual when that individual fails to plead or otherwise defend an action against her. After default is entered against a defendant, the "court is required to accept all of the [plaintiffs'] factual allegations as true and draw all reasonable inferences in its favor, but it is also required to determine whether the [plaintiffs'] allegations establish . . . liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citations omitted). Once a default is entered against a party, the court accepts as true all factual allegations in the complaint except those relating to damages. See, *Au Bon Pain Corp., v. Artect, Inc.,* 653 F.3d 61, 65, (2d Cir. 1981).

### A.   Class and Collectives Can be Certified.

There is the general principle that factual allegations in the complaint are deemed admitted by the defendant upon default; however, application of that general principle does not solve the class-certification issue. Rule 23(c) imposes an independent duty on the district court to determine by order that the requirements of Rule 23(a) are met regardless of the defendant's admissions. *Davis v. Hutchins*, 321 F.3d 641, 648–49 (7th Cir. 2003).

Accordingly, Plaintiffs and all other HHAs  respectfully request that this Court review the admitted facts and the record in support of this motion and, determine by order, that the requirements of Rule 23 have been satisfied.

The Court can certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the prerequisites in Rule 23(a) – numerosity, commonality, typicality and adequacy of representation – and one of the three requirements of Rule 23 (b). Fed.

R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d 124, 132-33 (2d Cir. 2001) superseded by statute on other grounds as noted in *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79,* 238 F.R.D. 82 (S.D.N.Y. 2006).

Certification of a class action for damages requires a showing that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

In certifying a class, the Court is not required to determine whether the action, if tried, would present intractable management problems. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); see Fed. R. Civ. P. 23 (b)(3). Rather, the Court has great discretion in determining whether to certify a class. *Amchem*, 521 U.S. at 624.

Additionally, an employee alleging violations of the FLSA may bring an action on behalf of all "other similarly situated employees." 29 U.S.C. § 216(b). Collective actions benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact," and by providing plaintiffs with the opportunity to "lower individual costs to vindicate rights by pooling of resources." *Hoffmann-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989). The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir. 2001).

Plaintiffs have met all of the prerequisites under Rule 23(a) and Section 216 of the Fair Labor Standards Act. In *Myers v. Hertz Corp.,* 624 F.3d 537, 547–48 (2d Cir. 2010), the Second Circuit explained that:

Rule 23 requires that a proposed class action (1) be sufficiently numerous, (2) involve

questions of law or fact common to the class, (3) involve class plaintiffs whose claims are typical of those of the class, and (4) involve a class representative or representatives who adequately represent the interests of the class. See Fed.R.Civ.P. 23(a). Moreover, Rule 23(b)(3), which would govern the proposed class action here, requires the party seeking certification to show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that class treatment would be superior to individual litigation. Fed.R.Civ.P. 23(b)(3). The "predominance" requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." [*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)]. The requirement's purpose is to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' " *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 104 (2d Cir.2007) (alteration omitted) (quoting *Amchem,* 521 U.S. at 615, 117 S.Ct. 2231). Therefore the requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir.2002); see also *In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 571 F.3d 953, 958 (9th Cir.2009) (noting that it is "the relationship between *548 the common and individual issues" that the requirement examines (internal quotation marks omitted))."

"Rule 23(b)(3) requires that the district court determine what questions of law or fact are common to the members of the class." *Cordes,* 502 F.3d at 106 (internal quotation marks and alteration omitted)." *Myers v. Hertz Corp.,* 624 F.3d at 548.

### 1.  **The Requirement of Class Definition is Satisfied.**

The Class is defined as "all current and former live-in home health aides ("Live-in HHAs") employed by CareOne and who worked one or more 24-hour shifts and who will be identified when CareOne is compelled to produce its payroll records, ("Class Members") anytime from January 13, 2017 to the date of final judgment in this matter ("Class Period")." See Compl. ¶¶ 58, 60-62, 69 & 72.

All HHAs are "domestic service employees who perform services of a household nature in or about a private home (permanent or temporary) as defined in 29 C.F.R. § 552.3, including the Plaintiffs and other similarly situated Home Health Aides, personal care aides, all of

whom are called caregivers, who work shifts of 24 hours or more, (hereinafter collectively referred to as "Live-in HHAs"). See, e.g., Compl. ¶ 62.

The Class period is from January 13, 2017[3] to the present date. Compl. ¶¶ 44-57, 58, 60 & 62.

Plaintiffs' class definition is precise and unambiguous. See, *Abramovitz v. Ahern*, 96 F.R.D. 208, 212 (D. Conn. 1982) citing, *Rappaport v. Katz*, 62 F.R.D. 512, 513 (S.D.N.Y.1974). Also see, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05MD1720MKBJO, 2019 WL 6875472, at *31 (E.D.N.Y. Dec. 16, 2019) (class as defined is not "truly indeterminable." *Petrobras* specifically distinguished the Second Circuit's approach from the "heightened ascertainability test" found in other circuits, noting that ascertainability presents only a "modest threshold" that "does not concern itself with the plaintiffs' ability to offer proof of membership under a given class definition." *In re Petrobras Sec.,* 862 F.3d 250, 269 (2d Cir. 2017); cf. *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 662 (7th Cir. 2015) (describing those courts that have adopted a heightened ascertainability requirement, and noting that "some courts have used this requirement to erect a nearly insurmountable hurdle at the class certification stage in situations where a class action is the only viable way to pursue valid but small individual claims").).

---

[3] The FLSA claims of Plaintiffs and the other HHAs are subject to equitable tolling, and are not limited to three years prior to the filing of this complaint. This complaint was filed on June 2, 2020. As alleged, The ordinary statute of limitations of a claim under the FLSA is two years, except that a cause of action arising out of a willful violation of the statute can be brought within three years. 29 U.S.C. Sec. 255(a). See, Compl. ¶ 46. Employers under the FLSA, are required by 29 C.F.R. § 516.4 "to post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy." *Id.* Plaintiffs allege that "Defendants failed to post or keep posted such notice required by 29 C.F.R. § 516.4 in conspicuous places where Plaintiffs and other HHAs were employed to permit them to observe readily a copy." Compl. ¶ 49. Courts can equitably toll Sec. 255(a) to avoid "inequitable circumstances." *Darowski v. Wojewoda,* 2017 U.S. Dist. LEXIS 208122, *14 (D.Conn. Dec. 19, 2017) (quoting *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir. 1996)). When employers fail to provide posters for their workers, informing them of their rights under the CMWA, equitable tolling is appropriate until the Plaintiff seeks the advice of counsel or learns of their rights some other way. See, e.g., *Lin v. Brennan,* 2011 U.S. Dist. LEXIS 132025, *14 (D. Conn. Nov. 15, 2011) (Droney, J) ("Defendants' failure to post any notice as to their employee's rights under state and federal labor laws tolls the statute of limitations for Plaintiffs' CMWA claim as well."). See supporting caselaw cited in the complaint, Compl. ¶¶ 44-57.

Plaintiffs have also satisfied the numerosity, commonality, typicality and adequacy of representation requirements under Rule 23(a) and Section 216 of the Fair Labor Standards Act.

### 2.  The Requirement of Numerosity is Satisfied.

A potential class of forty (40) members is generally presumed sufficiently numerous. See, *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. N.Y. 1995). The Rule 23 Class contains a group of 100 employees of CareOne. The Class List will be created after CareOne is compelled to produce its payroll records. The class list will contain 100 or more Live-in HHAs who worked at least one 24-Hour Live-in shift as employees of CareOne between January 13, 2017 to the present date. Compl. ¶¶ 27 & 62. According to CareOne, "CareOne employed more than 200 individuals from its inception but has not used more than 47 at a single time." Egbarin Declaration ¶ 15.

The Class is so numerous that joinder of all Class members is impractical. See Fed. R. Civ. P. 23(a)(1). *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993) ("Rule 23(a) requires a finding that the numerosity makes joinder of all class members 'impracticable,'" and "courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement.").

This class action also satisfies the numerosity requirement.

### 3.  The Requirement of Commonality is Satisfied.

""Rule 23(b)(3) requires that the district court determine what questions of law or fact are common to the members of the class." *Cordes,* 502 F.3d at 106 (internal quotation marks and alteration omitted)." *Myers v. Hertz Corp.,* 624 F.3d at 548.

The "questions of law or fact" that this case will ultimately require resolving, therefore, include

1) Whether CareOne paid Plaintiffs and all other live-in HHAs a flat daily rate for their work and did not calculate and pay overtime premiums as required by 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112;

2) Whether CareOne provided Plaintiffs and all HHAs with a time sheet, which did not have a place for them to record the interruptions to their sleep and meal times and;

3) Whether CareOne did not count the hours Plaintiffs and all other live-in HHAs worked during sleeping time or meal periods due to interruption by a call to duty, and failed to pay the Plaintiffs and all other live-in HHAs for these hours as required under 29 C.F.R. § 785.22, 29 C.F.R. § 785.19, 29 C.F.R. § 552.102 or C.G.S. § 31-76b(2) and § 31-76c. Cf. *Myers v. Hertz Corp.*, 624 F.3d at 548.

4) Whether CareOne is liable for the damages claimed in the Complaint including, but not limited to: compensatory and liquidated damages, interest, costs, disbursements attorneys' fees, and litigation costs and expenses.

The plaintiffs need only make a "modest factual-showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers v. Hertz Corp.,* 624 F.3d at 555 (citations and internal quotation marks omitted). *Hypolite v. Health Care Servs. of New York Inc.,* 256 F. Supp. 3d 485, 489 (S.D.N.Y. 2017).

If the plaintiffs demonstrate at the first stage of certification that "similarly situated" employees exist, the Court will conditionally certify the class, order that appropriate notice be given to putative class members, and the action will continue as a "collective action throughout the discovery process (Citation omitted). At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether

the plaintiffs who have opted-in are in fact 'similarly situated' to the named plaintiffs. See, *Hypolite v. Health Care Servs. of New York Inc.,* 256 F. Supp. 3d at 489.

Here for purposes of default judgment, Plaintiffs' allegations "show that "some" of the above questions can be answered with respect to the members of the class as a whole "through generalized proof" and that those common issues are "more substantial" than individual ones, *Moore*, 306 F.3d at 1252." *Myers v. Hertz Corp.,* 624 F.3d at 549.

### 4. <u>The Requirement of Typicality is Satisfied.</u>

Plaintiffs' claims are typical of those of the Class because, like all Class Members, the same unlawful conduct of CareOne, which is that CareOne paid a flat daily and failed to pay overtime and not also failed to pay for interruptions to sleep and meal breaks, was directed at both the named Plaintiff sand the Class. Each Class Member's claim arises from the same course of events and each Class Member makes similar legal arguments to prove CareOne's liability. *Robidoux v. Celani*, 987 F.2d at 936.

Defendants had a policy or practice of paying Plaintiffs and all other live-in HHAs a flat daily rate for their work and did not calculate and pay overtime premiums as required by 29 C.F.R. 778.112.

Defendants also had a policy or practice of providing Plaintiffs and all HHAs with a time sheet, which did not have a place for them to record the interruptions to their sleep and meal times.

And finally, Defendants had a policy or practice of not counting the hours Plaintiffs and all other live-in HHAs worked during sleeping time or meal periods due to interruption by a call to duty, and then failing to pay the Plaintiffs and all other live-in HHAs for these hours as required under 29 C.F.R. § 785.22, 29 C.F.R. § 785.19, 29 C.F.R. § 552.102 or C.G.S. § 31-76b(2) and § 31-76c.

Plaintiffs and all HHAs are the victims of these same policies or practices.

**5.**    <u>**The Requirement of Adequate Representation is Satisfied.**</u>

Plaintiffs and Class Counsel have fairly and adequately represented and protected the interests of all Class Members. Moreover, Plaintiffs have no interests antagonistic to Class Members. Class Counsel conducted a thorough pre-filing and continuing investigation and vigorously prosecuted this lawsuit.

The Law Office of Nitor V. Egbarin, LLC ("Egbarin Law Office") has extensive experience prosecuting FLSA and CMWA cases and is qualified to represent the Plaintiff and the members of the putative class. See Egbarin Declaration ¶ 18 with curriculum vitae attached therein as **Exhibit 1**. The Egbarin Law Office has no interest adverse to the class.

The representative parties will fairly and adequately protect the interest of the class.

The Court should certify the Class under Rule 23(b)(3) and Section 216 of the Fair Labor Standards Act. Certification is appropriate because, as set forth here Plaintiffs have satisfied the predominance and superiority requirements under Rule 23(b)(3).

**6.**    <u>**The Requirement of Predominance is Satisfied.**</u>

Questions of law or fact common to the class members predominate over any questions affecting only individual members.

Here again, all live-in HHAs were paid a flat daily rate for their work and were not paid overtime premiums as required by 29 C.F.R. 778.112; all live-in HHAs were provided with a time sheet, which did not have a place for them to record the interruptions to their sleep and meal times and; Defendants did not count the hours all live-in HHAs worked during sleeping time or meal periods due to interruption by a call to duty, and then failed to pay all live-in HHAs for these hours worked.

Specifically, the questions of law and fact common to all Class Members are described above. These common questions predominate over any individual issues. See *In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d at 139 ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.").

CareOne employed Plaintiffs and other class members, as live-in aides who work 24-hour shifts. The live-in aide who works a full shift of 24-hours is credited with 13-hours for the shift. CareOne paid Plaintiffs and all of their HHAs a flat daily rate for their work and did not calculate and pay overtime premiums as required by 29 C.F.R. 778.112.

During a typical week, Plaintiffs and other live-in HHs worked for seven (7) days at a rate of $140 per day. This typical workweek resulted in a minimum of 91 hours work. CareOne paid each Plaintiff and live-in HHA $980 for their work that week. CareOne should have calculated overtime by dividing $980 by 91 hours worked, resulting in a regular rate of $10.77 per hour. CareOne should have paid half that rate, or $5.38 per hour, for the 51 hours of overtime, adding $274.38 to each Plaintiffs' and Live-in HHA's pay for that week. Compl. ¶¶ 36-38.

Instead, CareOne paid Plaintiffs only $980 for that week, and failed to pay each Plaintiff the overtime premiums due under the law, (Compl. ¶¶ 39), resulting in $274.38 of unpaid overtime wages to each Plaintiffs' pay for each week they worked 7 days.

In addition, CareOne failed to accurately record all of Plaintiffs' work time, including interruptions during each Plaintiffs' sleep and meal breaks. CareOne provided Plaintiffs and all HHAs with a time sheet, which did not have a place for them to record their interruptions. Compl. ¶¶ 40-41.

In fact, Plaintiffs, and other HHAs, were frequently interrupted during their sleep and

meal breaks to care for CareOne's clients. CareOne's clients frequently needed to be attended to during the night for several reasons. CareOne's clients frequently interrupted Plaintiffs and other HHAs so much that they were unable to have at least five hours of uninterrupted sleep time per night. CareOne was aware of these sleep interruptions at night time because Plaintiffs and other HHAs informed CareOne of these interruptions. But CareOne never modified their time sheets or took any other steps to accurately record all hours worked by Plaintiffs and other HHAs. Compl. ¶¶ 42-43.

These common practices which violate inter alia, 29 C.F.R. 778.112 and 29 C.F.R. § 785.22, predominate over any individual issues of liability.

### 7. <u>The Requirement of Superiority is Satisfied.</u>

Finally, a class action is superior to other available methods for fairly and efficiently adjudicating class members' claims and "achieve economies of time, effort, and expense and promote uniformity of decision action and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor,* supra, 521 U.S. 615.

Additionally, a class action is clearly superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all Class Members is impracticable. Moreover, as the damages allegedly suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it impossible for all Class Members to individually redress the alleged harm done to them.

In sum, the Court should certify the class and collective for this default judgment.

### B. *The Court Should Appoint Plaintiffs' Counsel As Class Counsel.*

Under Rule 23, "a court that certifies a class must appoint class counsel …….[who]

must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(A), (B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(C).

As identified in his biography presented to the Court, Plaintiff's Counsel has experience in handling the types of claims asserted in the case. Plaintiff's Counsel also has some experience in litigating class actions and collective actions pursuant to the FLSA. See **Exhibit 1** to the Egbarin Declaration.

Counsel has diligently investigated, prosecuted, and settled this lawsuit, dedicated substantial resources to the investigation and prosecution of the claims at issue in the lawsuit, and demonstrated his knowledge of the state and federal labor laws at issue.

Therefore, the Court should appoint Plaintiff's Counsel to serve as Class Counsel for the Class as well pursuant to Rule 23(g).

Accordingly, for purposes of default judgment, the allegations in the complaint established facts for this Court to certify this collective under the FLSA and class action under Fed.R.Civ.P. 23(a) and Rule 23(b)(3).

### C.  Liability is Established.

The complaint alleges facts which establish that Defendants paid Plaintiffs and all other live-in HHAs a flat rate of $140 per day and did not calculate and pay overtime premiums when they worked in excess of 40-hours in a workweek, as required by 29 C.F.R. 778.112. Defendants informed Plaintiffs and all of their HHAs that they were allowed eight hours of sleep time and three one-hour meal breaks per day. This schedule resulted in a minimum of thirteen hours per day

of work. Over a 7-day work week, this schedule resulted in a minimum of 91 hours of work time, 51 of which was overtime. Compl. ¶¶ 30-36.

During a typical week, Plaintiffs and other HHAs worked as a live-in HHA for seven (7) days at a rate of $140 per day. According to their assigned schedule, Plaintiffs and other live-in HHAs worked a minimum of 91 hours for a seven day week. Defendants paid each Plaintiff $980 for their work that week. Defendants should have calculated overtime by dividing $980 by 91 hours worked, resulting in a regular rate of $10.77 per hour. Defendants should have paid half that rate, or $5.38 per hour, for each of Plaintiffs' 51 hours of overtime, adding $274.38 to each Plaintiffs' pay for that week. Compl. ¶¶ 37-38.

Instead, Defendants paid Plaintiffs only $980 for that week, and failed to pay each Plaintiff the overtime premiums due under the law. Compl. ¶ 39.

It is also established that Defendants provided Plaintiffs and all HHAs with a time sheet, which did not have a place for them to record their interruptions and; did not counting the hours Plaintiffs and all other live-in HHAs worked during sleeping time or meal periods due to interruption by a call to duty, and then failing to pay the Plaintiffs and all other live-in HHAs for these hours as required under 29 C.F.R. § 785.22, 29 C.F.R. § 785.19, 29 C.F.R. § 552.102 or C.G.S. § 31-76b(2) and § 31-76c. Defendants' clients frequently interrupted Plaintiffs and other HHAs so much that they were unable to have at least five hours of uninterrupted sleep time per night. Defendants were aware of these sleep interruptions at night time because Plaintiffs and other HHAs, from time to time, informed Defendants of these interruptions. But Defendants never modified their time sheets or took any other steps to accurately record all hours worked by Plaintiffs and other HHAs. Compl. ¶¶ 40-43.

Accordingly, for purposes of default judgment, the allegations in the complaint

established liability as alleged under the FLSA and the CMWA.

### D. Damages.

#### 1. **Unpaid Wages**

##### a. *Per Se Violation of 29 C.F.R. § 778.112*

*Kinkead v. Humana at Home, Inc.,* No. 3:15-CV-01637 (JAM), 2020 WL 1531295, at

*6 (D. Conn. Mar. 31, 2020), the court restated,

> Although the FLSA does not expressly define the "regular rate" of pay, DOL interprets
> the rate as a "rate per hour," 29 C.F.R. § 778.109, and "the Supreme Court has
> determined that it is 'the hourly rate actually paid the employee for the normal, non-
> overtime workweek for which he is employed.' " *Grochowski v. Phoenix Const.,* 318
> F.3d 80, 87 (2d Cir. 2003) (quoting Walling v. *Youngerman-Reynolds Hardwood Co.,*
> 325 U.S. 419, 424 (1945) (emphasis in original)).
> Section 778.109 of the DOL regulations "computes the regular rate by dividing a
> worker's Weekly Pay by the total number of hours actually worked during the workweek
> for which compensation was paid." *Powell v. Carey Int'l, Inc.,* 514 F. Supp. 2d 1302,
> 1318 (S.D. Fla. 2007) (emphasis added). If the employee receives an hourly rate, then the
> "regular rate" is simply the hourly rate. See 29 C.F.R. § 778.110(a). On the other hand, if
> the employee receives a day rate, then the "regular rate" is the hourly rate as calculated
> by dividing the total sum received at such day rates in a workweek by the total number of
> hours actually worked that week. See 29 C.F.R. § 778.112.

Also, Conn. Gen. Stat. § 31-76b(2) provides that employers and employees may agree

to exclude regularly scheduled sleep time, just like they may do under the FLSA. If there is an

agreement in writing for a regularly scheduled sleep period and if the employee is allowed time

for meals, then live-in HHWs <u>may be credited with as few as 13 hours per live-in shift</u> rather than

24 hours. *Kinkead* supra, 2020 WL 1531295, at *8. (Emphasis added).

Here, CareOne paid a flat fee of $140 per day to Plaintiffs and all other live-in

caregivers, although Plaintiffs and all other live-in caregivers generally worked round-the-clock,

24-hours per day, 7 days per week during the period they worked for Defendants. See, Affidavit

of Motlalepula Modise ("Modise Aff."), ¶¶ 8-11; Affidavit of Tirelo Mmolawa ("Mr. Mmolawa

Aff."), ¶¶ 8-11 and; Affidavit of Morwesi Mmolawa ("Mrs. Mmolawa Aff."), ¶¶ 8-12. See also

Egbarin Declaration ¶ 14.

Therefore, the total number of hours Plaintiffs and all other HHAs are expected to work in a full week is 91 (13-hours x 7). See, Conn. Gen. Stat. § 31-76b(2).

Similarly, if the employee receives a day rate, then the "regular rate" is the hourly rate as calculated by dividing the total sum received at such day rates in a workweek by the total number of hours actually worked that week. See 29 C.F.R. § 778.112.

The total sum received at the flat daily rate of $140 in a full workweek which is $980 ($140/day x 7-days/week), is then divided by the total number of hours actually expected to work, which is 91-hours.

Thus, CareOne should have calculated overtime pay by dividing $980 by 91-hours worked, resulting in a regular rate of $10.77 per hour. And then Defendants should have paid half that rate, or $5.38 per hour, for each of Plaintiffs' 51 hours of overtime hours in the workweek, thereby adding $274.38 to each Plaintiffs' pay for that week. Compl. ¶ 38. CareOne did not pay Plaintiffs and all other live-in HHAs $274.38 for each full workweek they worked.

### i. Modise

Plaintiff, Modise worked a total of 123 workweeks of 7 24-hour shifts in from May 1, 2017 to September 27, 2019, (see, Modise Aff. ¶¶ 8-10), therefore Defendant failed to pay Ms. Modise $33,748.74 ($274.38 x 123).

Plaintiff, Modise also worked a workweek of 4 24-hour shifts in September 2019. See, Modise Aff. ¶ 10. Defendants should have paid half that rate, or $5.38 per hour, for each of her 12 hours of overtime, (4-shifts x 13hrs = 52hrs, less 40hrs), adding $64.56 to her pay for that week. Therefore Defendant failed to pay Ms. Modise another $64.56.

The total unpaid wage owed Ms. Modise arising from CareOne's violation of 29 C.F.R. § 778.112, is **$33,813.30.**

### ii. Mr. Mmolawa

Plaintiff, Mr. Mmolawa worked a total of 103 workweeks of 7 24-hour shifts in from March 2, 2017 to September 14, 2019, (see, Mr. Mmolawa Aff. ¶¶ 5-10), therefore Defendant failed to pay Mr. Mmolawa $28,261.14 ($274.38 x 103).

Plaintiff, Mr. Mmolawa also worked a workweek of 6 24-hour shifts in the same Period. See, Mr. Mmolawa Aff. ¶ 5-10. Defendants should have paid half that rate, or $5.38 per hour, for each of his 38 hours of overtime, (6-shifts x 13hrs = 78hrs, less 40hrs) adding $204.44 to her pay for that week. Therefore Defendant failed to pay Mr. Mmolawa another $204.44.

The total unpaid wage owed Mr. Mmolawa arising from CareOne's violation of 29 C.F.R. § 778.112, is **$28,465.58.**

### iii.    Mrs. Mmolawa

Plaintiff, Mrs. Mmolawa worked a total of 84 workweeks of 7 24-hour shifts in from January 13, 2017 to September 16, 2019, (see, Mrs. Mmolawa Aff. ¶¶ 5, 6, 7-9, 10), therefore Defendant failed to pay Mrs. Mmolawa $23,047.92 ($274.38 x 84).

Plaintiff, Mrs. Mmolawa also worked a workweek of 5 24-hour shifts in December 2017. See, Mrs. Mmolawa Aff. ¶ 10. Defendants should have paid half that rate, or $5.38 per hour, for each of her 15 hours of overtime, (5-shifts x 13hrs = 65hrs, less 40hrs), adding $80.70 to her pay for that week. Therefore Defendants failed to pay Mrs. Mmolawa another $80.70.

Mrs. Mmolawa also worked a total of 16 workweeks of 5 24-hour shifts from November 26, 2018 to March 18, 2019. See, Mrs. Mmolawa Aff. ¶¶ 9 & 11. Defendants paid her only $700 for the workweek ($140 x 5) instead of $834.50 for each work week. Therefore Defendants failed to pay Mrs. Mmolawa another $2,152.00 ($134.50 x 16).

Plaintiff, Mrs. Mmolawa also worked a workweek of 2 24-hour shifts in December

2017 (see, Mrs. Mmolawa Aff. ¶ 11), Defendants should have paid half that rate, or $5.38 per hour, for each of her 15 hours of overtime, (2-shifts x 13hrs = 26hrs. There were no overtime hours worked in this workweek and therefore no overtime pay was due.

The total unpaid wage owed Mrs. Mmolawa arising from CareOne's violation of 29 C.F.R. § 778.112, is **$25,280.62.**

### iv.    All Other 100 Class Members[4]

"CareOne employed more than 200 individuals from its inception but has not used more than 47 at a single time." See Egbarin Declaration ¶ 15. However, for purposes of default judgment, it is established that CareOne employed more than 100 employees during the 3-years class period. See, Compl. ¶¶ 24-27.

Using the average full workweeks worked by named Plaintiffs as samples for all other class member, the average workweeks worked by each class member is 103 workweeks of 7 24-hour shifts, from January 13, 2017 to the present date, October 2, 2020. Therefore, Defendants failed to pay each class member $28, 261.14 ($274.38/workweek x 103 workweeks).

The total unpaid wage owed all 100 class members arising from CareOne's violation of 29 C.F.R. § 778.112, is **$2,826,114.00** (100 x $28,261.14).

### b.    _Interrupted Sleep[5]_

---

[4] The class claims of sleep interruptions and working through meal breaks cannot be established at this time as there is insufficient sample of Live-in HHAs to make this calculation. However, that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification. *Seijas v. Republic of Argentina,* 606 F.3d 53, 58 (2d Cir. 2010)(citation omitted). Due to the vast variations of individual interruptions, 3 samples are insufficient to calculate class damages for sleep and meal break interruptions. Whereas, with the per se violation, the pay data from the named Plaintiffs are sufficient as exemplars to make calculation for the class for the per se violation at this time.

[5] 29 C.F.R. § 785.22 provides, "Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked. (Citations omitted) (b) Interruptions of sleep. If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement

The name Plaintiffs will testify that their patient could never sleep and kept them up at night, every night on the days they provided care to the patient. The named Plaintiffs did not get at least five hours of uninterrupted sleep time each night during her eight hour sleep period because they cared for clients with dementia and schizophrenia and other severe medical condition for the entire eight hour sleep period.

CareOne should have paid Plaintiffs for the full eight hours during each shift as required under 29 C.F.R. Sec. 785.22 and 29 C.F.R. Sec. 552.102, but did not do so.

### i. Modise

Plaintiff, Modise worked a total of 123 workweeks of 7 24-hour shifts in from May 1, 2017 to September 27, 2019, (see, Modise Aff. ¶¶ 8-10). The total number of 24-hour shifts is 861 (7 24-hour shifts x 123 workweeks). Therefore CareOne failed to pay Ms. Modise for each of the 8-hours during each shift at the overtime rate of one and one half times regular rate of $10.77 per hour, or $16.15.

Therefore CareOne failed to pay Ms. Modise, $111,241.20 ($16.15 x 8 x 861). Plaintiff, Modise also worked a workweek of 4 24-hour shifts in September 2019. See, Modise Aff. ¶ 10. The total number of 24-hour shifts is 4 (4 24-hour shifts x 1 workweek). Therefore CareOne failed to pay Ms. Modise, $516.80 ($16.15 x 8 x 4).

The total unpaid wage owed Ms. Modise arising from CareOne's violation of 29 C.F.R. § 785.22, is **$111,758.00.**

### ii. Mr. Mmolawa

For purposes of sleep interruptions, Plaintiff, Mr. Mmolawa worked a total of 80

---

purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time."

workweeks of 7 24-hour shifts in from March 2, 2017 to October 31, 2018. See, Mr. Mmolawa Aff. ¶¶ 5, 10, 15-25. The total number of 24-hour shifts Mr. Mmolawa worked in 2017 is 287. See, *Id.* And the total number of 24-hour shifts he worked in 2018 is also 287. See, *Id.* Therefore CareOne failed to pay Mr. Mmolawa for each of the 8-hours during each shift at the overtime rate of one and one half times regular rate of $10.77 per hour, or $16.15. Therefore CareOne failed to pay Mr. Mmolawa, $74,160.80 ($16.15 x 8 x 574).

The total unpaid wage owed Mr. Mmolawa arising from CareOne's violation of 29 C.F.R. § 785.22, is **$74,160.80.**

### iii.    Mrs. Mmolawa

Plaintiff, Mrs. Mmolawa's sleep was interrupted when she worked 7 24-hour shifts from January 13, 2017 to March 17, 2017, for Mamie, for a total of 9 workweeks. See, Mrs. Mmolawa Aff. ¶¶ 5 & 16. The total number of 24-hour shifts is 63 (7 24-hour shifts x 9 workweeks). Therefore CareOne failed to pay Mrs. Mmolawa for each of the 8-hours during each shift at the overtime rate of one and one half times regular rate of $10.77 per hour, or $16.15. Therefore CareOne failed to pay Mrs. Mmolawa, $8,139.60 ($16.15 x 8 x 63).

Also, Plaintiff, Mrs. Mmolawa's sleep was interrupted when she worked for Geraldine during her visits to Danbury Hospital. Mrs. Mmolawa Aff. ¶¶ 18-20. Mrs. Mmolawa worked 2 night time shifts a month in the period from March 20, 2017 to September 16, 2019. See, Mrs. Mmolawa Aff. ¶¶ 6, 18 & 19. The total number of hospital visits for Geraldine's diabetes treatment was 47. Therefore CareOne failed to pay Mrs. Mmolawa for each of the 8-hours during each of those 47 visits Therefore CareOne failed to pay Mrs. Mmolawa, $6,072.40 ($16.15 x 8 x 47).

The total unpaid wage owed Mrs. Mmolawa arising from CareOne's violation of 29 C.F.R. § 785.22, is **$14,212.00.**

*Working Through Meal Breaks*[6]

Plaintiffs will also testify that they worked through their meal breaks and they could never leave their patients alone by themselves during mealtimes in the entire period of Plaintiffs' employment.

CareOne should have also paid wages to Plaintiffs for working through their meal breaks since their meal time was spent predominantly for the benefit of the CareOne. *Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d at 64; 29 C.F.R. Sec. 785.19 and 29 C.F.R. Sec. 525.102.

### i. Modise

Plaintiff, Modise worked a total of 123 workweeks of 7 24-hour shifts in from May 1, 2017 to September 27, 2019, (see, Modise Aff. ¶¶ 8-10). The total number of 24-hour shifts is 861 (7 24-hour shifts x 123 workweeks). Therefore CareOne failed to pay Ms. Modise for each of the 3-hours during each shift at the overtime rate of one and one half times regular rate of $10.77 per hour, or $16.15.

Therefore CareOne failed to pay Ms. Modise, $41,715.45 ($16.15 x 3 x 861). Plaintiff, Modise also worked a workweek of 4 24-hour shifts in September 2019, (see, Modise Aff. ¶ 10). The total number of 24-hour shifts is 4 (4 24-hour shifts x 1 workweek). Therefore CareOne failed to pay Ms. Modise, $193.80 ($16.15 x 3 x 4).

The total unpaid wage owed Ms. Modise arising from CareOne's violation of 29 C.F.R. § 785.19, is **$41,909.25.**

### ii. Mr. Mmolawa

Plaintiff, Mr. Mmolawa was able to take all his meal breaks when he worked for both

---

[6] The named Plaintiffs were required to spend their entire shift, including their one-hour "meal break," engaged in activities that predominantly benefit CareOne were entitled to compensation for the half-hour "meal breaks" during which she was required to remain with CareOne's client and not leave her unattended to. See, *Havrilla v. United States*, 125 Fed. Cl. 454, 464 (2016), interpreting 29 C.F.R. § 785.19 and citing *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 64 (2d Cir.1997).

Louis and Anthony from March 2, 2017 to September 14, 2019, (see, Mr. Mmolawa Aff. ¶¶ 22 & 25).

CareOne did not violate 29 C.F.R. § 785.19, as it relates to Mr. Mmolawa and he is owed **$0.00.**

### iii.    Mrs. Mmolawa

Plaintiff, Mrs. Mmolawa worked a total of 612 24-hour shifts in from March 20, 2017 to September 16, 2019, (see, Mrs. Mmolawa Aff. ¶¶ 6-11). Therefore CareOne failed to pay Mrs. Mmolawa for each of the 3-hours during each shift at the overtime rate of one and one half times regular rate of $10.77 per hour, or $16.15. Therefore CareOne failed to pay Mrs. Mmolawa, $29,651.40 ($16.15 x 3 x 612).

The total unpaid wage owed Mrs. Mmolawa arising from CareOne's violation of 29 C.F.R. § 785.19, is **$29,651.40.**

### 2.    FLSA Liquidated Damages

To avoid an award of liquidated damages, an employer must "show[ ] to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]. See, *Tapia v. Mateo*, 96 F. Supp. 3d 1, 5 (D. Conn. 2015) quoting," 29 U.S.C. § 260. It is the employer's "burden to prove both subjective good faith and objective reasonableness." *Tapia v. Mateo*, 96 F. Supp. 3d at 5 quoting, *Reich v. S. New England Telecomms. Corp.,* 121 F.3d at 71.

Thus, to establish good faith, the employer "must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them." *Barfield v. N.Y.C. Health and Hosps. Corp.,* 537 F.3d 132, 150 (2d Cir.2008) (internal citations and quotation marks omitted). Also see, *Perez v. Platinum Plaza 400 Cleaners, Inc.,* No. 12 CIV. 9353 PAC, 2015 WL 1881080, at *4 (S.D.N.Y. Apr. 24, 2015), citing *Solis v. Cindy's Total Care, Inc.,* No. 10 CIV.

7242 PAE, 2012 WL 28141, at *23 (S.D.N.Y. Jan. 5, 2012) ("Defendants have not established that they acted in good faith in violating the FLSA ….The defendants knew of the overtime pay and recordkeeping requirements of the FLSA); accord *Karic v. Major Auto. Cos. Inc*., 992 F.Supp.2d 196, 203–04 (E.D.N.Y.2014).

Here, it is CareOne who cannot show that it took active steps to ascertain the dictates of the FLSA (i.e., 29 C.F.R. § 785.19 and 29 C.F.R. § 785.22) and then act to comply with them.

### 3. **CMWA Penalty Damages**

Pursuant to Conn. Gen. Stat. Ann. "§ 31-68 (a) (1) If any employee is paid by his or her employer less than the minimum fair wage or overtime wage to which he or she is entitled under sections 31–58, 31–59 and 31–60 or by virtue of a minimum fair wage order he or she shall recover, in a civil action, (A) twice the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court, or (B) if the employer establishes that the employer had a good faith belief that the underpayment of such wages was in compliance with the law, the full amount of such minimum wage or overtime wage less any amount actually paid to him or her by the employer, with costs and such reasonable attorney's fees as may be allowed by the court. " CT LEGIS 2SP 22 Special Session, P.A. No. 19-1, 2019 Conn. Legis. Serv. July 22 Sp. Sess. P.A. 22 Special Session, P.A. No. 19-1 (H.B. 7501) (WEST).

To recover double damages, or twice the full amount of the unpaid minimum or overtime wage under the CMWA, "[a]n employee must show evidence of bad faith, arbitrariness, or unreasonableness." *Tapia v. Mateo*, 96 F. Supp. 3d at 5–6, citing *Morales v. Cancun Charlie's Rest.,* No. 3:07-CV-1836 CFD, 2010 WL 7865081, at *9 (D. Conn. Nov. 23, 2010).

In contrast to the FLSA, under the CMWA, liquidated damages are punitive in nature.

*Morales v. Cancun Charlie's Rest.*, 2010 WL 7865081, at *9, citing, *Shortt v. New Milford Police Dept.*, 562 A.2d 7, 15 & n.13 (Conn.1989) (finding that damages under Conn. Gen. Stat. § 31–72 "provide a penalty in order to deter employers from deferring wages once they accrue"); *Harty v. Cantor Fitzgerald & Co.,* 881 A.2d 139, 154 (Conn.2005) (noting that statutory multiple damages under the CMWA are distinct from common law punitive damages, but do serve a "similar punitive purpose").

An employee must show evidence of bad faith, arbitrariness, or unreasonableness to recover double damages under Section 31–68(a)(1). *Morales,* 2010 WL 7865081, at *9, citing, *Butler v. Hartford Technical Inst.,* 704 A.2d 222, 230 (Conn.1997).

There is considerable authority supporting an award of liquidated damages under both the FLSA and related state minimum wage statutes. *Tapia v. Mateo*, 96 F. Supp. 3d at 5, citing *Morales v. Cancun Charlie's Rest.,* 2010 WL 7865081, at *8-9 (awarding double liquidated damages under the FLSA and the CMWA); *Wellington v. Duncan,* No. 3:13–cv–1179 (JBA) (D.Conn. Jul. 2, 2014) (same); *Wei Yan Yan v. 520 Asian Rest. Corp.,* No. 13–cv–2417 (KNF), 2014 WL 7177259, at *9 (S.D.N.Y. Dec. 17, 2014) (awarding double liquidated damages under the FLSA and the New York Labor Law); *Wicaksono v. XYZ 48 Corp.,* No. 10 Civ. 3635, 2011 WL 2022644, at *7 (S.D.N.Y. May 2, 2011) (same); *Hernandez v. P.K.L. Corp.*, No. 12–cv–2276, 2013 WL 5129815, at *6 (E.D.N.Y. Nov. 23, 2013) (stating that an award of liquidated damages under both the FLSA and the New York Labor Law "appears to be the majority approach"). An award of double liquidated damages is particularly reasonable in the context of a default judgment, as the Defendants have failed to object. See Wellington, at *3; *Hernandez,* 2013 WL 5129815, at *6 n. 6.

Also see *Perez v. Platinum Plaza 400 Cleaners, Inc.,* No. 12 CIV. 9353 PAC , 2015

WL 1881080, at *3 (S.D.N.Y. Apr. 24, 2105), concluding that "[a]lthough there is a split of authority on whether a plaintiff may recover liquidated damages under both the FLSA and the [state labor law] for the same violations during the same time period, courts in the Second Circuit have allowed for the simultaneous recovery of both forms of liquidated damages., citing *Yu Y. Ho v. Sim Enters.,* 2014 WL 1998237, at *18–19 (S.D.N.Y. May 14, 2014); accord *Easterly v. Tri–Star Transport,* 2015 WL 337565, at *2 (S.D.N.Y. Jan. 23, 2015).

In *Morales v. Cancun Charlie's Rest.,* No. 3:07-CV-1836 CFD, 2010 WL 7865081, at *9 the court found that the evidence before the Court of bad faith, arbitrariness, or unreasonableness to recover double damages under Section 31–72, "indicates that the defendants made no effort to ensure that Morales was paid in full for his work. Morales questioned the amount of his pay on multiple occasions and the defendants, specifically Peter Biondi, took no investigatory or corrective measures. In fact, Mr. Biondi typically responded with profane language and argued with Morales about his complaints. Furthermore, the amount of Morales's pay was clearly arbitrary—Morales was not informed of his wage until his sixth week of work; no records of Morales's hours were kept; and Morales was paid in cash, including at times, cash from Mr. Biondi's pocket. Accordingly, Morales is entitled to damages under the CMWA in the amount of his unpaid wages, $43,135.78."

In this case, the evidence in this arbitration of bad faith, arbitrariness, or unreasonableness to recover double damages under Section 31–72, includes, the testimonies of Plaintiffs that she reported that they were frequently awoken at night but were ignored.

In addition, the evidence will show that CareOne failed to comply with their non-delegable obligation to make, keep, and preserve a record showing the exact number of hours worked by Plaintiff, in violation of C.F.R. § 552.110(b). (Emphasis added).

CareOne is a repeat offender. CareOne was aware that its policy of paying Plaintiffs and all other Live-in HHAs a flat daily rate of $140 was a per se violation of 29 C.F.R. § 778.112, yet CareOne continued such policy and refused to pay its employees overtime rate for the overtime work. Live-in employees were entitled to be paid a minimum of 13-hours per live in shift. See, *Kinkead* supra, 2020 WL 1531295, at *8, citing, Conn. Gen. Stat. § 31-76b(2). Plaintiffs and all other Live-in HHAs worked 7 24-hour shifts in several workweeks, working 91-hours in such workweeks. Yet CareOne failed and refused to pay Plaintiffs and all other HHAs overtime rate for the hours they worked in excess of 40-hours in such workweeks.

The evidence will also show that CareOne did not maintain and preserve payroll or other records containing all the hours Plaintiffs worked each workday and the total hours Plaintiffs worked each workweek; the total daily or weekly straight-time earnings or wages due for hours and; the total premium pay for overtime hours Plaintiffs worked, in violations of 29 C.F.R. § 516.2(a)(7), (8) & (9), thereby misrepresenting Plaintiffs' and all other live-in HHAs' true wage information.

The above evidence demonstrates CareOne's bad faith, arbitrariness, or unreasonableness, and warrant recovery of double damages under Section 31–68(a)(1).

## IV.   SUMMARY OF DAMAGES

### Unpaid Wages:

1.   The actual unpaid wage due Ms. Modise is **$187,480.55**

2.   The actual unpaid wage due Mr. Mmolawa is **$102,626.38**

3.   The actual unpaid wage due Mrs. Mmolawa is **$69,144.02**

4.   The actual unpaid wage of **$28,261.14** due each other Live-in HHA total,

**$2,826,114.00**

**A. FLSA Liquidated Damages:**

    1. Ms. Modise's FLSA liquidated damages of **$187,480.55**

    2. Mr. Mmolawa's FLSA liquidated damages of **$102,626.38**

    3. Mrs. Mmolawa's FLSA liquidated damages of **$69,144.02**

    4. FLSA liquidated damage of **$28,261.14** for each other Live-in HHA, total

**$2,826,114.00**

**B. CMWA Penalty Damages:**

    1. Ms. Modise's CMWA penalty damages of **187,480.55**

    2. Mr. Mmolawa's CMWA penalty damages of **$102,626.38**

    3. Mrs. Mmolawa's CMWA penalty damages of **$69,144.02**

    4. CMWA penalty damage of $**28,261.14** for each other Live-in HHA, total

**$2,826,114.00**

**C. Class Action Bonus:**

    1. Ms. Modise's Bonus as a Class Representative, **$15,000**

    2. Mr. Mmolawa's Bonus as a Class Representative, **$15,000**

    3. Mrs. Mmolawa's Bonus as a Class Representative, **$15,000**

D. The statutory interest 12% per annum on unpaid wages of Ms. Modise as of October 2, 2020, is $22,497.67

E. The statutory interest 12% per annum on unpaid wages of Mr. Mmolawa as of October 2, 2020, is $12,315.15

F. The statutory interest 12% per annum on unpaid wages of Mrs. Mmolawa as of October 2, 2020, is $8,297.28

G. The statutory interest 12% per annum on unpaid wages of each other live-in HHAs as of

October 2, 2020, is $3,391.34, total $339,133.68.

Gross Recovery: **$9,983,338.63**

H. Attorney's Fee of One-third (1/3) of Gross Recovery: **$3,327,779.54**

I. Costs & litigation Expenses: **$1087.80**

Court Filing fee and Marshal Service fee: $620.80

Office costs: $467.00

**TOTAL DAMAGES**: **$13,312,205.97**

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully ask that the Court to grant the motion for default judgment against CareOne and enter the proposed Order in connection with this motion, submitted herewith.

Dated Hartford, Connecticut, this 2nd day of October 2020

PLAINTIFFS,

Motlalepula Modise, Tirelo Mmolawa, Morwesi Mmolawa, individually and on behalf of other similarly situated individuals

By://s// ct05114 _____

Nitor V. Egbarin, ct05114
Law Office of Nitor V. Egbarin, LLC
100 Pearl Street, 14th Floor
Hartford, CT 06103-3007
Tel: (860) 249-7180
Fax: (860) 408-1471
E-mail: NEgbarin@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2020, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail for anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Nitor V. Egbarin*