UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

)
Motlalepula Modise, Tirelo Mmolawa.        )
and Morwesi Mmolawa                        )
    Plaintiffs,                            )
                                           )
and                                        )
                                           )
Dino Davies                                )
    Opt-in Plaintiff,                      )
                                           )
v.                                         )    NO. 3:20-CV-00765-SVN
                                           )
                                           )
CareOne Health Services, LLC and           )
Abel N Osagie                              )
    Defendants,                            )    September 15, 2022
                                           )
_____    )


**<u>DEFENDANT'S RESPONSE TO ECF 118</u>**

Defendant/Counterclaim Plaintiff Abel N. Osagie (hereinafter "Osagie"), hereby makes this motion for leave to file pursuant to Rule 15 of the Federal Rules of Civil Procedure, the attached response to the Transcript of the Oral Argument on May 17, 2022 (ECF 118).

We are filing this response because it is necessary in the interest of justice, that this leave for additional responsive pleading be granted.  As I mentioned during the hearing, every argument from Mr. Egbarin was based on wrong and new information that Mr. Egbarin was aware were not accurate but the defendant had no evidence to prove the inaccuracy.  For example, the paystubs of Mr. Mmolawa were available to Mr. Egbarin but he failed to disclose them earlier to the defendant despite the defendant's

request for same and he knew that his client had not told the truth both during his

deposition and his response to my interrogatories. Bringing in evidence from a party that

was not part of this action to erroneously prove a wrong point was fraudulent.   Further,

it is obvious from the transcript that the Court Reporter had difficulty understanding what

the defendant said.

　　　　We present a compilation of the flawed heuristics in the attached response.


                                                Respectfully Submitted,

                                                Defendant/Counterclaim Plaintiff,
                                                ABEL OSAGIE

                        By:      /s/ Abel Osagie
                                 Abel Osagie, Pro Se
                                 28 Ward Drive South,
                                 Danbury, CT 06810
                                 Tel.: (203) 730-0070
                                 Fax: (203) 730-0094
                                 osagienet@aol.com

F20.01.046v.1

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was filed on the date stated above and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


Defendant/Counterclaim Plaintiff


By:      /s/ Abel Osagie
              Abel Osagie, Pro Se
              28 Ward Drive South,
              Danbury, CT 06810
              Tel.: (203) 730-0070
              Fax: (203) 730-0094
              osagienet@aol.com

F20.01.046v.1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

|                                                   |   |                          |
|---------------------------------------------------|---|--------------------------|
| Motlalepula Modise, Tirelo Mmolawa.               | ) |                          |
| and Morwesi Mmolawa                               | ) |                          |
|          Plaintiffs,                              | ) |                          |
|                                                   | ) |                          |
| and                                               | ) |                          |
|                                                   | ) |                          |
| Dino Davies                                       | ) |                          |
|          Opt-in Plaintiff,                        | ) |                          |
|                                                   | ) |                          |
| v.                                                | ) | NO. 3:20-CV-00765-SVN    |
|                                                   | ) |                          |
|                                                   | ) |                          |
| CareOne Health Services, LLC and                  | ) |                          |
| Abel N Osagie                                     | ) |                          |
|          Defendants,                              | ) | September 14, 2022       |
|                                                   | ) |                          |
|                                                   | ) |                          |

_____


## <u>DEFENDANT'S RESPONSE TO ECF 118</u>

Defendant/Counterclaim Plaintiff Abel N. Osagie (hereinafter "Osagie"), hereby submits this response to the transcript pf the May 17, 2022.  Reading through the transcript it became abundantly clear that my statements were not accurately reflected and the flawed heuristics espoused by Mr. Egbarin were probably veiled enough that they may not be obvious.

As a result of the urgency of the need here, I would like to apologize if all of the I's and T's are not dotted and crossed.  This offers a clarification on the issues discussed.

Almost all the statements made by Mr. Egbarin were statements that he knew to be false but designed to permeate a wrong ruling in this case.  This is a list of the flawed heuristics that Mr. Egbarin made in this hearing.  In the following, we shall use the Defendant's Response to the Local Rule 56(a)2, ECF 102 because it has the admissions and responses to denials.

I.      **FLAWED HEURISTICS DESIGNED TO MISLEAD**

1.      **Flawed Heuristic 1: ECF 118 Page 3:23-25 and 4:1-2**

We have already addressed the issue of Day rates and Job rates, 29 C.F.R. Sec 778.112 in ECF 77-1.  The continued insistence of the relevance of law to a joint-employment situation for a 24-hour service where, the employees have benefits of housing and food is a violation of the need for judicial efficiency.

For the type of service where employees have a 24-hour responsibility but work for less 24 hours (13 per our definition of PCA24 as indicated by all the calculations in the employee, client's records and our policies), **there is no way of writing the hours worked in straight regular time and overtime when the 24 hours are not completed for the CT Home Care Services**.  Any law requiring strict regular hours and overtime fails.  To reduce the confusion, we chose to keep records of how we arrived at our payment system and make it easy enough to calculate the gross due the employees.  See ECF 102-8, 102-9, 102-10 for the various periods.  Our PCA24 is CareOne's response to the CTDSS code 1023z and 1225z.  This is what we assigned to employees and how they are paid.  This meets the requirement of FSLA and it is the state of CT that has to sanitize her laws and remove conflicts with reality if the laws are to be valid.  The US Federal government and the state of Connecticut would also be in violation of the defendant's fifth amendment rights if they make any law requiring services that they have not adequately paid for.

2.      **Flawed Heuristic 2: ECF 118 Page 4:22-25**

The Federal Regulation 29 C.F.R. 552.102(a) has been undergoing changes because it has been aptly pointed out that the FLSA focuses on the actions of the

employer, not the employee, the Secretary was without authority to require the acceptance of meals be voluntary and uncoerced.  The phrase "written" is not and adjective to agreement in 29 C.F.R. §552.102(a) – a common error in Mr. Egbarin's statements.

As recent as July 25, 2022, the USDOL updated 29 CFR Part 531 to include language that they had earlier disseminated in other publications See Exhibit 1.  The only law with the "written" is the CT state law which while it claims to follow the federal law has not been sanitized to remove the "written".  Employees follow our written policies which we apply uniformly to all employees.

### 3.        Flawed Heuristic 3: ECF 118 6:3-12

The defendant's record is not only the paystub.  It includes all documentations in the clients' and employees' folders, our policies, notices to employees at the employee portal and verbal instructions to employee that reflect our policies.  Records in the system show that we calculated the expenses for lodging and food at the home of each of our clients.  It is the prerogative what fraction of the calculated 3(m) credits we applied to all the employees equally.  The Plaintiffs cannot defeat a motion for summary judgement when records provided by the defendant show that data used were "fair or reasonable".  See Exhibit 1.

### 4.        Flawed Heuristic 4: ECF 118 7:1-25; 8:2-25 and 9:1-13

This is another example of intentionally misleading the court by Mr. Egbarin.  Mr. Egbarin represents Ms. Kgarebe in the CT Superior Court at Danbury; he is aware that we prepared paystubs in house until we moved it to Complete Payroll Solutions.  Our first payroll with Complete Payroll Solutions was on 11/04/2016 for

-3-

the period 10/9/2016 to 10/22/2016.  Complete Payroll Solutions refused to prepare

payrolls for any staff that did not have a valid social security number (violation of 8

US Code 1324a).  Prior to that, Ms. Kgarebe received paystubs from CareOne

every two weeks, taxes were properly removed and paid to the respective

agencies.  See Exhibit 2-3.

Mr. Davies who is a US citizen got his paystubs regularly and had an account with

the payroll company for self-service access to his historical paystubs which is still

active for all former and current employees. See ECF 109-2.

If Diligent Enterprises and other agencies chose to continue violating the law, that

was their decision but our choice not to have written contracts violating the law is

not a cause for action as such a contract would have been void.  In consideration of

what was best for the sudden change, we gave the employees time to get proper

credentials but we were not going to violate any laws that we could avoid

knowingly.  We agree that the Plaintiffs have to be paid overtime and we did as we

paid all of our employees the same way but any right that would put us in violation

of the law, they were not entitled to.  As it has turned out, these Plaintiffs are still

working without trying to follows the laws of the United states.


### 5.        Flawed Heuristic 5: ECF 118 9:11-25 and 10:1-12

While Diligent Enterprises continued to provide paystubs to Mr. Mmolawa who did

not have a valid social security number, that was their decision to continue to

violate a law that the administration had warned they would prosecute.  This is the

prerogative of each US administration.  We no longer employ anyone without

proper credentials because we do not want to be subject to the whim of the

administration of the day.

-4-

F20.01.045v.1

Our gross rate calculations had an idealized calculation method that was simple enough that anyone should not have a problem estimating what their correct gross was.  Employees in the state of CT are "at will" employees.  Any employee was free to leave the company or not join the company because they were not going to be getting paystubs because of their immigration status.

Our record backed how we actually arrived at the amounts we paid.  Mr. Egbarin's earlier claim that these plaintiffs had no knowledge of the minimum wage in the US has now been proven to be inaccurate.

### 6.        Flawed Heuristic 6: ECF 118 10:9-24; 11:2-14

There is a huge difference between record keeping and providing paystubs.  Mr. Egbarin confuses the issues here.  I could not provide the paystubs to employees without valid social security numbers because it would have been a violation of federal law.  All employees were paid the same way for PCA24.  Our records clearly show how many units that were completed by each employee and what we paid the employees.  See ECF 102-8, 102-9, 102-10 for the various periods.  Our records also showed what was regular and overtime for each unit completed.

The law is to compute the gross and take 3(m) credits for food and housing.  That is what you have in 102-8, 102-9, 102-10.  It is not to find the equivalent rates for regular hours after credit as Diligent enterprises did in ECF 109-1.  While the type of breakdown in ECF 109-1 gives more information in each paystub, we were not able to implement such a scheme at the time nor is it easy to read.  Ours was easier to read, met the information in our records but did not implement the state of CT requirement of putting it on each pay stub in regular and overtime.  This

-5-

requirement is not implementable when there is an uncompleted unit.  The state of CT law requiring strict regular time and overtime is not implementable for the CTDSS Procedure Code 1225z.  That was true in 2013 and is true today.  The USDOL, CTDOL and CTDSS all combined to inform agencies that keeping the records was the responsibility and not meeting the older laws that needed to be sanitized or laws that are not implementable.  Many errors in the laws were known then and now. The USDOL has been working to refine the laws and it is not an opportunity for fraudsters.

Any law from the US or CT governments that violates our ability to implement the CT Home Care program services are in violation of our fifth amendment rights and are therefore void.

It is not sufficient for Mr. Egbarin to show the paystubs from other agencies, he needs to show how they achieved it for uncompleted units for the CTDSS Procedure code 1225z.  Prior to the hearing, Mr. Egbarin and the Plaintiffs hid their prior paystubs claiming that they did not have them.  Compare Mr. Mmolawa's response to Interrogatory Q1 for Employer B in Exhibit 4 to the paystubs in ECF 109-1.  Diligent Enterprises operates ComforCare in Danbury.  Mr. Mmolawa worked for Diligent Enterprise for more than 2 years.

Prior to my seeing the paystubs in ECF 109-1 during the hearing, I had believed Mr. Egbarin and all the experts who claimed the paystubs correctly identified that Mr. Mmolawa was (like our employees) paid 13 hours for each 24 hours (instead of 12 hours as the paystubs show).  If Mr. Egbarin and all the other experts looked at

-6-

22 of the paystubs and made such glaring errors, what damage could have been suffered by these Plaintiffs who could not get a paystub but knew that their Pay gross could be inferred by multiplying the days they worked by $140?  How does someone who believes that he was paid $100 per day understand ECF 109-1 and now claims he suffered a damage when he received $980 for every completed 7 days?

In is not sufficient to claim a violation of the law when a reasonable jury cannot infer any monetary damage.  The Plaintiffs' claims are not sufficient for the jury to return a verdict in their favor.

### 7.        Flawed Heuristic 7: ECF 118 11:2-14

The paystubs that Mr. Egbarin presented on May 17, 2022 shows that i) Mr. Mmolawa was paid for 12 hours a day while providing 1023z to Mr. Haddad; ii) On 3/24/2017, Mr. Mmolawa was paid an overtime rate of $15.15 per hour which implies a regular rate of $10.10 – the minimum wage at that time.  Mr. Mmolawa did not tell the truth under oath that he did not know what the minimum wage was. He certainly had enough information to arrive at the 3(m) credits we used for each unit of PCA24.  He certainly could have asked for our rate sheet which was no industry secret.  Ms. Mmolawa also worked for Diligent Enterprises before CareOne Health Services.  Mr. Mmolawa brought his client to CareOne because he knew what Ms. Mmolawa made for the same service and had information about how it broke down into regular and overtime.  This was no secret to any employee who worked for CareOne Health Services.

-7-

8. **Flawed Heuristic 8: ECF 118 12:3-6**

Mere claim of the food and lodging being excessive is not sufficient to defeat our claim that the rates we used were fractions of the reasonable and fair estimates we took for each of the relevant clients.  Mr. Egbarin is looking for receipts but this is not what the Federal government required.  See Exhibit 1.  It is not sufficient for Mr. Egbarin to claim "excessive" when he cannot point to a single line item that is excessive in the collected expense sheets of the clients.

While we painstakingly followed the guidelines from USDOL, CTDOL and CTDSS in calculating what the gross payment should be using "reasonable Cost" and "fair value", at the end of the day, the payments are no more that pay at the minimum wage with a credit removed for 3(m) credits as shown in ECF 102-8, 102-9, and 102-10.  The law prescribes a "minimum" wage and not what we have to pay.  Our credits are fractions of the "reasonable cost" and "fair value" data from each of the relevant clients.

Before Mr. Egbarin understood the significance of the 13 hours per day, in the complaint that initiated this action, he claimed "Defendants informed Plaintiffs and all of their HHAs that they were allowed eight hours of sleep time and three one-hour meal breaks per day.  This schedule resulted in a minimum (sic!) of thirteen hours per day of work".  ECF 1, ¶34; and ECF 102, ¶18.  This is our PCA24 policy which is verifiable by our records.  Connecticut is an at will state.  If the defendants who earned less before CareOne (could estimate what our rates were from their pay checks) were not happy with our policies, they could have walked.  That is their prerogative.  In deciding to become an employee of CareOne, they agreed with our

-8-

payment structure.  The Plaintiffs should have followed our policy and not work more hours than we instructed.  Better yet, they should have informed us that their clients required more than 13 hours before they started working for CareOne.


9.      **Flawed Heuristic 9: ECF 118 12:10-15**

Mr. Egbarin made no request for any documents regarding Mr. Dino Davies.  If he had one, I challenge him to provide a copy of his request.    Mr. Dino joined the action later and I saw no need to depose him.  Mr. Dino Davies not only was provided paper paystubs, he had access to the self-service portal at the Complete Payroll Solutions website.  Mr. Egbarin violated at every turn his duties to adequately respond to my interrogatories and requests for production and even as late as September 2021, he allowed his clients to claim under oath what he knew to be untrue.  Exhibit 4.  None of these acts are enough to deny my motion for partial summary judgement.


10.     **Flawed Heuristic 10: ECF 118 13:1-15**

Mr. Egbarin deposed Abel Osagie in the Kgarebe case and in this action.  He had the chance to understand the CareOne pay system and had records prepared for all of the relevant clients in this action.  His continued feigning of ignorance of how we met the federal and state regulations is not only fraudulent, it is a waste of the court's time designed to induce errors.


ECF 102-7 to 102-10 is the legal requirement in addition to all the records we provided for the individual clients.  There is no requirement for us to find an effective rate for regular hours.  The rate for regular hours is the minimum wage

and over time is one and a half of that.  No payroll system that is not proprietary as of this date can handle this because commercial payrolls have been designed for deductions and not credits.  As mentioned earlier it is impossible to break a PCA24 service involving 1225z into strictly regular time and overtime because of how the CTDSS designed their Medicaid program.  One might ask the question why this is important.  The three agencies who control the FSLA and CMWA laws combined to tell agencies how the CTDSS 1023z program met the laws.  We do not offer PCA24 to private citizens, it is strictly a response to the 1023z and 1225z.  Any interpretation of the FSLA and CMWA that shows that we were not adequately compensated for the CT Home Care Program, a waiver program of the US Center for Medicare would render such a law inexecutable.  I had no duty to pay any employee to provide services to US citizens who are in no way related to me more money than it costs for us to provide the services.

## 11.       Flawed Heuristic 11: ECF 118 15:24

It is now well accepted that USDOL is the organization given the authority by congress to make changes to the FSLA.  In the state of CT, the CTDSS was given authority to makes laws regarding the CT Home Care Program. One of such laws is RCSA Section 17b-341 which makes it illegal for anyone to provide services under the Home Care Program that was not pre-authorized.

The CTDSS guidelines & Procedures for the PCA service under the CHCPE (CT Home Care Program for Elders) has been provided as ECF 108-5.  The guidelines require the completion f Form W-1532 which goes through the Justification of PCA for Overnight and Live-in Services for each consumer.

-10-

Home Care agencies do not receive Form W-1532 from CTDSS but It is my expectation that this form would be completed for every consumer before a case is assigned to my agency.  One of the requirements is ECF 108-6, ¶14 – "Will the PCA be able to obtain a total of 8 hours of sleep per day, 5 of which are uninterrupted?".  This is a requirement of 1023z and forms a basis for the implementation of RCSA Section 17b-341.  We only offer PCA24 to consumers of the CTDSS programs because of this protection.  How else was I to know what is happening at the home of the client?  That is the law when it comes to the CTDSS programs.

For private programs, it is my responsibility to charge the client for services rendered based on completed services but we do not offer private PCA24 for good reason.


The state only assigned PCA24 for most of these clients and we define that as a 13-hour service and no more.  It is the responsibly of the aide to document any deviation using one of the authorized methods by CTDSS.  These Plaintiffs failed to do that.


## 12.        Flawed Heuristic 12: ECF 118 16:8-10

I do not know what job description Mr. Egbarin is referring to here.  We offered PCA hourly, PCA Overnight, PCA24 and the 24-hours hourly PCA services.  See the Plaintiffs' admission in ECF 102, ¶6.  We offered PCA hourly and PCA24 to clients of CTDSS.  While we participate in PCA Overnight, we have not found yet any CTDSS consumer that meets the federal requirements.  In almost all case, they are turned into PCA hourly for 12 hours or Homemaker for 12 hours.  None of

-11-

these clients were offered the PCA hourly for 24 hours by the CTDSS nor would we have used one employee for such a service.  Mr. Egbarin should provide the document he is referring to here.


**13.       Flawed Heuristic 13: ECF 118 17:1-9**

ECF 107-6 was jointly provided by the CT DSS, Gainwell Corporation and Sandata. It is a printed material from these agencies to home care agencies.  The title is Electronic Visit Verification Service Code Listing.  It goes on to describe the services provided to clients enrolled in the Connecticut Home Care Program.  At the agency level, we receive authorization to provide these services (also see ECF 94-9 to 94-12) and we also bill for these services using verified service times in the EVV system.  It is irrelevant as to what the CT DSS sees as their code for the Personal Care Services: Per Diem Agency, this is the authorization that we received from CTDSS and our associated response to this authorization is the provision of our PCA24.  Even if there is a law for the payment of interruption hours to aide, that is not the service we were authorized to provide by CTDSS nor paid for by CTDSS.  Any services beyond our defined 13 hours of service is a violation of the terms under which we provided the CTDSS Personal Care Services:  Per Diem Agency.  Such a deviation should have been reported by any of the authorized CTDSS methods and these Plaintiffs failed to do that.

It is a violation of our fifth amendment rights for any government in the USA to source form us and pay us any money that cannot meet any of the interpretations of their laws.

-12-

**14.        Flawed Heuristic 14: ECF 118 17:14-22**

The CTDSS paid Home Care agencies for the PCA24, $241.20 between 1/1/2019 and 9/30/2019 or a total of $1688.40 for 7 days. And $243.61 per diem between 10/1/2019 and 8/31/20 or a total of $1705.27 for 7 days.

At a rate of 24 hours per day, a week is 168 hours which breaks down to 40 regular hours and 128 hours of overtime.

At a rate of 13 hours a day, 7 days would be 91 hours.  For this completed scenario, the aide would be paid 40 regular hours and 51 overtime (This is our standard definition of PCA24)

On 1/1/2019, at $11.00 per hour, the overtime rate would be $16.5.

24 hours a day would result in a weekly pay of $2,552 (which is greater than $1688.4) and a 13-hour work day would result in a gross of $1,281.50.  The US government and state of CT further defines certain payroll taxes for the employer as follows: Medicare rate 1.45%, Social security 6.2%, Unemployment and both Federal and State (between 1.9 and 3%).  For states like CT that owed money to the Federal government on unemployment benefits there was an addition rate (about 1.2% for a period).  Home Care agencies were further required to obtain workers' compensation and general liability insurance.  Where is the money? While the USDOL, CTDOL and CTDSS can make any laws for which they have been granted authority, any conflict with the terms of which services were sourced from CareOne Heath Services are not enforceable.

There is no dispute that we clearly defined what the employs would get after following our pay structure to be equivalents to multiples of $140 for the relevant period.  We paid them that as our records indicate.  We cannot be held responsible

-13-

for work done by the Plaintiffs that we were not aware of.  They provided services to consumers of the CTDSS who were not related to the defendants.  The defendants had nothing to gain from the Plaintiffs' violations of direct instructions from Osagie.

**15.        Flawed Heuristic 15: ECF 118 18:6-19**

Mr. Egbarin fails to acknowledge that our PCA24 was only for consumers of the CT Home Care Program which is a Medicare and Medicaid waiver program.

**16.        Flawed Heuristic 16: ECF 118 21:6-17**

The FLSA has been in flux since 2013.  The program to include third party companion agency was ambitious for the 24-hour live in program.  We used "reasonable cost" and "fair estimate" for determining the 3(m) credits.  Mr. Egbarin's reliance on the use of actual receipts is outdated as the USDOL has since realized that those were not available to third party agencies who work on Medicare style programs.  How does a third-party agency who is not allowed to have a contract with say the CTDSS consumer come up with the receipts of the consumer's expenses?  That is not the law.  We followed the law as required.  A reasonable jury would agree with me

**17.        Flawed Heuristic 17: ECF 118 23:1-6**

Again, we refer to Exhibit 1 and ECF 77-8.  The relevant phrases in order to take 3(m) credits are "reasonable cost" and "fair value".  We would have gladly used values provided by CTDSS (e.g., $17.50 per day for food when we could not find alternative data) but when they failed to honor their promise, we gathered

-14-

"reasonable cost" and/or "fair value" for our lodging and food estimates.  ECF 77-8, Q12A describes the same process we used for obtaining our housing "fair value" as described by USDOL.  Since we used the same values for all the client's 3(m) credit, the values we used are very favorable to an aide working in Brookfield or Southbury where they had two bedrooms compared to an aide in Danbury in a one Bedroom.  These plaintiffs have not presented any evidence that our values were inaccurate nor that our 3(m) credits were higher than the benefits these Plaintiffs received.

**18.      Flawed Heuristic 18: ECF 118 25:1-25 and 26:1-26**

There is a big difference between services offered to private consumers and services under the CT Home Care program for elders.   There is an assumption that the aides can go ahead and do anything they want.  That is not PCA24. PCA24 inherits all the properties of 1023z (or what ever CT DSS wants to call it) which by CGS 31-13a and RCSA 17b-341 limits the services to authorized services and no more.

As long as the aide can have 5 hours of no interruption, a further total of 3 hours which may include interruptions (i.e. excluding the working time) and 3 hours of personal time, that is covered in the pay the aides received.  Any services outside of that is barred by RCSA 17b-341.  The State of CT does not pay us on behalf of Medicare for work beyond what they pay us for and the Federal Government of the US has no right to make any laws requiring that we pay anyone on their behalf for services that they did not pay us for.  That is a violation of my fifth amendment.

F20.01.045v.1

**19.       Flawed Heuristic 19: ECF 118 28:1-28**

The Medicare waiver programs are not private services.  It is a go-no-go programs.
The consumer either qualify for the authorized services and we provide them or
they do not qualify for the authorized services and we do not provide such a
service.  The services under the CT home care program were never intended to
meet all the need of the consumer.  We were only requested to provide pre-
authorized services and the aides were given instructions to provide only pre-
authorized services.  It is the prerogative of the CTDSS to augment their services
when made aware of the insufficiency of existing one.  There are clients where we
have walked away and were moved to the hospital.


Aides can report that there was a change in their client's condition which would set
in motion an investigation to see if the services met the needs of the consumer.
Electronically, that would be by the inclusion of code 99.  This report can be on the
timesheet or any paper.  A text to me would also do.  I have to be able to document
the issues involved and those are the policies.  If these Plaintiffs had informed me
of the issues, I would have asked them to document it.  The fact that they did not
document the issues they are claiming now using a form that I can send or put on
record is an indication that they never told me.  No jury would believe that I would
ignore a chance to make more money and choose of a violation of the Plaintiffs
right.


**20.       Flawed Heuristic 20: ECF 118 28:1-10**

Mr. Egbarin claims he asked me to provide the paper timesheets that these
plaintiffs completed.  The simple answer is that there are none on their client's

-16-

record.  None of these plaintiffs have claimed that they provided any written documentation of their issues either on paper or electronically.  The electronic records are kept by Sandata Corporation which is in no way related to CareOne.  I wonder what magical documents Mr. Egbarin is claiming has to be produced by the defendant.  Mr. Egbarin forgets conveniently that on 10/9/2016 we moved to using the Sandata EVV system in documenting services as required by CTDSS. Kgarebe had paper documentations prior to 10/9/2016(none after this date) and those were provided to Mr. Egbarin not because there was a member of the bar association involved but because they were available.  See Exhibit 2.

### 21.      Flawed Heuristic 21: ECF 118 32:3-16

The Plaintiffs admit that CareOne Health Services only had one facility (or establishment) in one location at a time in the state of CT.  See ECF 102, ¶1. CareOne had no right to post notices in the private homes of individuals with whom we had no contracts.  We also had no obligation to post any notice at the remote location where they worked with a co-employer.  The co-employers are not parties to this case and are excluded from both FSLA and CMWA requirements.   ECF 102, ¶2 means as a matter of law, we had all the required posting in our facility in 2008 while ECF 102, ¶10 shows that we had the posters in 2020.

We are in a modern world.  Most things are electronic now. CareOne had an employee portal where we posted important notices for employees.  See Exhibit 2 for information reminding employees of this resource and admission in ECF 102, ¶10.  This appeared on every pay stub unless bumped off by newer information.  I also wrote this address on the EVV guides that we provided to all employees.  The company website is also on my business card which every employee got.  These

-17-

Plaintiffs admitted they never visited the employee portal despite the instructions from their employer.  No jury would agree with the Plaintiffs that they suffered any damage from any law (real or imaginary) that was impossible for me to comply with when they had instructions that would remedy the situation and they failed to follow it.

22.　　Flawed Heuristic 22: ECF 118 38:17-20 and 39:1-12

The defendant's Counterclaim was filed on August 20, 2020 [ECF 18].  The Court's order on ECF 39 did not occur until August 5, 2021.  It was Mr. Egbarin's duty to inform Mr. Dino Davies of the existing counterclaim before he joined the action.  Mr. Egbarin should blame himself for his lack of due diligence instead of trying to run the defendant's defense and complaints for him.

Moreover, as I told the court, I have had no reason to communicate with Mr. Davies since all his questions about exit issues were answered when he left the agency. This ruse is not a cause for the partial summary motion to be defeated.  Mr. Egbarin should look to what his flaws are and those in this action, when clients he represented against other agencies, who worked for CareOne failed to join this action.   Mr. Egbarin is also under the illusion that only his clients have rights.  It used to be fairly known amongst first year law students that one man's rights end where another man's rights begin.

23.　　Flawed Heuristic 23: ECF 118 82:2-6

While I have covered this earlier, this assumption by Mr. Egbarin that we did not have a record for housing and lodging costs is severely flawed.  We used

-18-

"reasonable cost" or "fair value" since we had no access to the actual receipts of the expenses.

## II.     CONCLUSION

We contend that none of these flawed heuristics are enough for a jury to return a verdict in favor of the Plaintiffs in terms of the partial summary judgement.

The plaintiffs knew that they were required to work no more than 13 hours (their own admission in the Complaint) and they were correctly paid for 13 hours and when we could for 14 hours per unit.   They also voluntarily accepted the lodging and food since it was a requirement for the job.  The employer met all the FLSA record keeping requirements.  The 3(m) credits are pre-gross credits and no vendor till date has a method of actually taking credits in the paystub system.  That is the reason that the only way to do it today is to pre-estimate the regular rates after the 3(m) credit (this is not the law but a work around).  There is also no way of writing the 1225z part of PCA24 in straight regular and overtime.  The USDOL has made efforts to revise the requirements.  It is the State of Connecticut that has failed to sanitize the CMWA.  Any non-executable law is unenforceable as they would violate rights and social sensibility.  There also has to be a perceptible damage and not mere negligence on the part of Osagie.

There was no bad faith on the part of the employer and mere negligence is not enough for a violation of the FLSA.   As a matter of law, Osagie is entitled to relief as to the FLSA and CMWA claims of these Plaintiffs.

Osagie tried to help these Plaintiffs by giving them time to sort out their immigration problems, paying them more than any other CTDSS vendor in Fairfield county because of CareOne's low overhead, but they chose to neglect their duties and be fraudulent in their dealings with him as they have in their pleadings in this action.  Their misrepresentations and violations of their duties were willful and wanton.  As a matter of law, Ms. Modise, Mr. and Mrs.

-19-

Mmolawa are each liable to Osagie as to all of his counterclaims.

Since Osagie is the only member of CareOne who interacted with these Plaintiffs and was in charge of managing the day to day operating activities of CareOne, if he is not guilty of violating FLSA and CMWA based on the facts which are not in dispute, CareOne cannot be guilty of violating FLSA and CMWA as a matter of law.  We implore the court to set aside the default judgement against CareOne *sua sponte* and find that CareOne is not guilty of the FLSA and CMWA claims of these plaintiffs.

Respectfully Submitted,

Defendant/Counterclaim Plaintiff,
ABEL OSAGIE

By:     /s/ Abel Osagie
        Abel Osagie, Pro Se
        28 Ward Drive South,
        Danbury, CT 06810
        Tel.: (203) 730-0070
        Fax: (203) 730-0094
        osagienet@aol.com

-20-

F20.01.045v.1

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing was filed on the date stated above and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Defendant/Counterclaim Plaintiff

By:    <u>/s/ Abel Osagie</u>
Abel Osagie, Pro Se
28 Ward Drive South,
Danbury, CT 06810
Tel.: (203) 730-0070
Fax: (203) 730-0094
osagienet@aol.com

-21-

F20.01.045v.1