UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MOTLALEPULA MODISE; MORWESI MMOLAWA; TIRELO MMOLAWA; *and all others similarly situated*, <br>   *Plaintiffs*, <br><br> v. <br><br> CAREONE HEALTH SERVICES, LLC; ABEL N. OSAGIE, <br>   *Defendants*. | 3:20-CV-765 (SVN) <br><br><br><br><br><br> February 27, 2023 |

## RULING ON ORDER TO SHOW CAUSE

Sarala V. Nagala, United States District Judge.

  Individual Plaintiffs Motlalepula Modise, Morwesi Mmolawa, and Tirelo Mmolawa were formerly employed by CareOne Health Services, LLC ("CareOne"), as personal care assistants ("PCAs") providing live-in care for elderly clients. They brought this collective action against CareOne and Abel Osagie ("Defendant"), the sole owner of the company.[1] Plaintiffs claim that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58 *et seq.*, by failing to properly compensate them for overtime hours worked, including time their sleep was interrupted by the clients' needs. Representing himself, Defendant filed several state law counterclaims arising from Plaintiffs' alleged failure to inform him of times when the clients interrupted Plaintiffs' sleep.

  The Court recently granted in part and denied in part Defendant's motion for summary judgment with respect to Plaintiffs' claims and his counterclaims. ECF No. 122; *Modise v.*

---

[1] CareOne has not appeared in the case, and Plaintiffs' motion for default judgment against it remains pending. ECF Nos. 21, 28. Defendant has attempted to represent CareOne in various proceedings before this Court, and he has been repeatedly advised that he cannot do so. ECF Nos. 14, 21. Accordingly, although CareOne is a named Defendant in this case, the Court will refer to Osagie, the only Defendant with an appearance in the case, as Defendant.

*CareOne Health Servs., LLC*, No. 3:20-CV-765 (SVN), 2022 WL 16573560, at *22 (D. Conn. Nov. 1, 2022). Although the Court denied Defendant's motion for summary judgment with respect to his state law counterclaims, the Court ordered Defendant to show cause why the Court should not *sua sponte* enter judgment in Plaintiffs' favor on his negligence and negligence *per se* counterclaims pursuant to Federal Rule of Civil Procedure 56(f). *Modise*, 2022 WL 16573560, at *21–22. For the reasons set forth below, the Court concludes that there is no genuine dispute of fact precluding judgment in Plaintiffs' favor regarding Defendant's negligence and negligence *per se* counterclaims.

## I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY

The Court assumes the parties' familiarity with the facts of this case, set forth in more detail in the Court's ruling on Defendant's motion for summary judgment. *See Modise*, 2022 WL 16573560, at *1–3. In short, the Connecticut Department of Social Services ("DSS") reimburses home healthcare and companion service agencies such as CareOne for certain services provided to eligible clients. *Id.* at *1. Consistent with regulations promulgated by the DSS, CareOne offers two relevant types of services: one live-in PCA pursuant to DSS Procedure Code 1023z, who provides daytime assistance with the client's daily living needs; or three PCAs who work eight-hour shifts to provide full-time assistance with the client's heightened needs. *Id.* CareOne applied for reimbursement from the DSS based on whether a particular client required daytime or full-time assistance. *See id.*

Plaintiffs were live-in daytime PCAs assigned to clients pursuant to Procedure Code 1023z. *See id.* Defendant contends that the billing and reimbursement of those clients pursuant to Procedure Code 1023z was based on Plaintiffs' representations that their clients were able to sleep through the night and did not require full-time assistance. *Id.* at *18. Nevertheless, Plaintiffs

contend that they experienced interruptions to their sleep time due to their clients' nighttime needs. *See id.* at *2. Plaintiffs further contend that they informed Defendant of the interruptions to their sleep time and thus should have been compensated for the entire sleep time, but Defendant paid them only a daily flat rate that did not account for overtime compensation. *Id.* at *3. Defendant disputes these facts.

In 2020, Plaintiffs filed the present four-count action in federal court, asserting one count under the FLSA and one count under the CMWA against each of the named Defendants. *Id.* at *4. Appearing *pro se*, Defendant filed a sixteen-count counterclaim against the named and future opt-in Plaintiffs. *Id.* Specifically, Defendant claims that each Plaintiff committed fraud, negligent misrepresentation, negligence, and negligence *per se* or statutory negligence by failing to properly report their working hours and sleep time interruptions and by violating various statutes. *Id.* In essence, Defendant contends that Plaintiffs failed to inform him that their clients required more care than a PCA authorized by Procedure Code 1023z was meant to provide. Had Plaintiffs informed him that their clients required overnight care, his argument goes, the clients would have been categorized as requiring three PCAs to provide twenty-four-hour care, and thus CareOne would have received greater reimbursement from DSS for those services.

Following discovery, Defendant filed a motion seeking summary judgment in his favor with respect to Plaintiff's FLSA and CMWA claims as well as his state law counterclaims. *Id.* at *4. Relevant to Plaintiff's FLSA and CMWA claims, the Court found genuine disputes of fact as to whether Plaintiffs in fact experienced interruptions to their sleep time, whether Defendant was aware of such interruptions, and whether their compensation properly included overtime compensation for the sleep time, among other issues. *See id.* at *11–13. In addition, with respect to Defendant's counterclaims for intentional and negligent misrepresentation, the Court found

genuine disputes of material fact that precluded summary judgment in Defendant's favor. *Id.* at *19. Specifically, the Court explained that the record contained conflicting evidence regarding whether Plaintiffs in fact informed Defendant of the interruptions to their sleep, and that those facts were material to whether Plaintiffs mislead Defendant in that regard. *Id.*

With respect to Defendant's counterclaims for negligence and negligence *per se*, the Court reasoned that the same dispute of fact also rendered summary judgment in Defendant's favor improper. *Id.* at *20. The Court also, however, identified reasons why there appeared not to be genuine disputes of fact that would preclude summary judgment in *Plaintiffs'* favor on those counterclaims. *Id.* at *21. Accordingly, the Court invoked Federal Rule of Civil Procedure 56(f) and ordered Defendant to show cause why Plaintiffs should not be granted summary judgment as to Defendant's negligence and negligence *per se* counterclaims.[2] *Id.* at *22.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(f) provides that a district court may, after "giving notice and a reasonable time to respond," grant summary judgment for a nonmovant or "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Courts in this district have *sua sponte* granted summary judgment if, "after giving notice and a reasonable time to respond and after identifying for the parties material facts that may not be genuinely in dispute," the record "still shows no genuine issue as to any material fact, and a party is entitled to judgment as a matter of law." *Melillo v. Brais*, No. 3:17-cv-520

---

[2] Defendant raised negligence and negligence *per se* counterclaims against all named Plaintiffs as well as against "Mary or John Doe," representing future opt-in Plaintiffs. Countercl., ECF No. 18, ¶¶ 144–45, 149–50. In his response to the Court's order to show cause, however, Defendant seeks to exclude Dino Davies, the only opt-in Plaintiff, from the Court's Rule 56(f) ruling because he does not know whether Davies is a Plaintiff to whom Defendant's negligence and negligence *per se* claims apply. Def.'s Mem., ECF No. 123, at 17. The Court denies this request. Initially, Defendant appears to assert negligence and negligence *per se* claims against Davies through the Doe counterclaims, which are based on the same theories of liability discussed below. In addition, the Court notes that discovery is closed, and the time for Defendant to seek amendment of his counterclaims in light of information he learned, or did not learn, in the ordinary course of discovery has passed.

4

(VAB), 2019 WL 1118091, at *6 (D. Conn. Mar. 11, 2019) (cleaned up) (quoting *In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66, 96 (2d Cir. 2016)); *see also Jackson Nat'l Life Ins. Co. v. Roosen*, No. 3:18-cv-934 (MPS), 2019 WL 1980358, at *6 (D. Conn. May 3, 2019). The judge's function in this inquiry, as when a party has moved for summary judgment pursuant to Rule 56(a), is to determine "whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Melillo*, 2019 WL 1118091, at *6 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

A factual dispute must be both genuine and material to defeat summary judgment, meaning that it "might affect the outcome of the suit under the governing law" and could allow a reasonable jury to return a verdict for the adverse party. *Anderson*, 477 U.S. at 248. In considering whether to grant summary judgment, a court "must construe the facts in the light most favorable to the [adverse] party and must resolve all ambiguities and draw all reasonable inferences against [other party]." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted). When the adverse party will bear the ultimate burden of proof at trial, that party must "designate *specific facts* showing that there is a genuine issue for trial." *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (emphasis added) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

The Court bears in mind that a *pro se* litigant's filings and motions are liberally construed to raise the strongest arguments they suggest. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

### III. DISCUSSION

    A. Negligence

The Court first concludes that Plaintiffs are entitled to judgment as a matter of law with respect to Defendant's negligence counterclaims. The elements of a negligence cause of action "are well established: duty; breach of that duty; causation; and actual injury." *McDermott v. State*, 316 Conn. 601, 609 (2015) (citation and internal quotation marks omitted). Defendant "must meet all of the essential elements of the tort in order to prevail." *LaFlamme v. Dallessio*, 261 Conn. 247, 251 (2002). Relevant here, duty "is a legal conclusion about relationships between individuals, made after the fact, and is imperative to a negligence cause of action." *McDermott*, 316 Conn. at 609 (alteration, citation, and internal quotation marks omitted). "Whether a duty exists is a question of law for the court, and only if the court finds that such a duty exists does the trier of fact consider whether that duty was breached." *Ruiz v. Victory Props., LLC*, 315 Conn. 320, 328 (2015).

The existence of a duty is determined by considering "whether the specific harm alleged by the plaintiff was foreseeable to the defendant," or, in other words, "whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result." *Id.* (citation and internal quotation marks omitted). If a court determines that the harm was foreseeable, the "final step in the duty inquiry" considers whether the defendant's duty should, as a matter of public policy, extend to the harm suffered. *Jaworski v. Kiernan*, 241 Conn. 399, 408 (1997); *see also Murillo v. Seymour Ambulance Ass'n*, 264 Conn. 474, 479 (2003).

To determine whether the harm alleged was foreseeable to Plaintiffs, the Court first identifies the specific harm Defendant alleges to have suffered. In his counterclaim, Defendant

6

alleges that he suffered harm from Plaintiff's alleged failure to inform him of their clients' overnight needs because such failure deprived him of the greater income that he would have received from classifying the clients as requiring twenty-four-hour care and obtaining greater reimbursement from the DSS.  Countercl., ECF No. 18, ¶¶ 60, 87.  Defendant has not, however, explained how this harm—which essentially boils down to lost revenue—was foreseeable to Plaintiffs.  For example, Defendant has not explained how a PCA would, as a necessity of their employment, be versed in the complex reimbursement scheme between the DSS and the agency.

In responding to the Court's order to show cause, Defendant appears to abandon this theory of harm altogether.  Instead, he identifies another harm flowing from Plaintiffs' alleged failure to inform him of their clients' overnight needs, specifically, that, when Plaintiffs were routinely deprived of sleep, their own health was threatened, such that they were at risk of being "injured in the course of employment," Def.'s Mem., ECF No. 123, at 11–13.  He argues that, if Plaintiffs were ultimately injured in the course of their employment because they were tired from sleep interruptions, they would try to recover from Defendant and CareOne, resulting in damages.  *Id.*[3]

This theory cannot support Defendant's negligence counterclaims for two reasons.  First, Defendant's new theory of negligence is significantly different from that articulated in his counterclaims, and it is long settled in the Second Circuit that a party "may not use his or her opposition to a dispositive motion as a means to amend the complaint."  *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) (summary order); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

---

[3] With respect to Plaintiff M. Mmolawa, Defendant appears to claim that she failed to "clock out" when she took her client to the hospital, and, thus, overcharged CareOne. Def.'s Mem., ECF No. 123, at 16.  He claims that the costs of this suit are the damages caused by M. Mmolawa's actions.  These allegations sound more in intentional or possibly negligent misrepresentation, and Defendant's counterclaims for these causes of action are proceeding.  Because there appears to be no other articulated basis to hold M. Mmolawa liable for negligence, Defendant's counterclaim for negligence against M. Mmolawa must be dismissed.

Second, even if this were not a new theory, the Court finds that, for purposes of establishing a duty in a negligence claim, the alleged injuries are too remote and speculative to have been foreseeable to Plaintiffs.  Defendant claims that, *if* Plaintiffs suffered sleep interruptions, they *may have been* so tired at work that they *may have* suffered injuries on account of their tiredness, and they then *may have* sought recovery from Defendant for such injuries, and Defendant *may have* been required to compensate Plaintiffs for those injuries.  Based on that chain of speculated events, Defendant claims, Plaintiffs are liable in negligence.  But it is far from clear that an ordinary person in Plaintiffs' positions would have anticipated they might be liable in this manner.  Indeed, Defendant does not identify any harm he or CareOne actually suffered resulting from the alleged sleep deprivation from which Plaintiffs suffered.  For example, Defendant has not alleged that he has been found liable for an injury suffered by a Plaintiff as a result of that Plaintiff not sleeping enough.

In sum, Defendant has not identified a harm he has suffered that was a foreseeable consequence of Plaintiffs' alleged failure to inform him of the clients' overnight needs.  Because he has not identified a foreseeable harm resulting from Plaintiffs' actions, he has not demonstrated that they owed him a duty with respect to any such harm, which is a necessary element of a negligence cause of action.  Thus, Plaintiffs are entitled to judgment as a matter of law with respect to Defendant's negligence claims.

### B. Negligence *Per Se*

The Court next concludes that that Plaintiffs are entitled to judgment as a matter of law with respect to Defendant's negligence *per se* counterclaims.  Negligence *per se* effectively engrafts a particular statutory standard onto the standard of care imposed by the duty element of a negligence cause of action.  *Gore v. People's Sav. Bank*, 235 Conn. 360, 376 (1995); *accord*

*Telkamp v. Vitas Healthcorp. Atl.*, No. 3:15-CV-726 (JCH), 2016 WL 777906, at *10 (D. Conn. Feb. 29, 2016). In other words, the jury needs only to "decide whether the relevant statute or regulation has been violated. If it has, the defendant was negligent as a matter of law." *Gore*, 235 Conn. at 376. Negligence *per se* is appropriate where (1) the plaintiff was "within the class of persons protected by" the relevant statute, and (2) the injury suffered "is of the type that the statute was intended to prevent." *Id.* at 368–69.

Here, while Defendant's supplemental briefing does not separately address the negligence *per se* claims, Defendant's counterclaims contend that all three named Plaintiffs were negligent *per se* because they allegedly violated Connecticut General Statutes §§ 17a-412(a) and 17b-450, which pertain to mandatory reporting of abuse, neglect, exploitation, and abandonment of residents in long-term care facilities and elders.[4] Countercl. ¶¶ 56, 80, 120. Defendant further alleges Plaintiffs T. Mmolawa and M. Mmolawa were negligent *per se* because they abandoned clients during work hours. *Id.* ¶¶ 79–95, 117–22.

But Plaintiffs are not necessarily liable to Defendant in negligence *per se* just because they may have violated various state laws. Rather, to maintain his negligence *per se* claims, Defendant must also show that he is within the "class of persons protected by" the statutes he cites and that his injury is "of the type which the statute was intended to protect." *Gore*, 235 Conn. at 376. Here,

---

[4] Specifically, Connecticut General Statute § 17a-412(a) lists various individuals tasked with reporting suspected abuse or neglect of a resident of a long-term care facility, including medical professionals, social workers, and "any person paid for caring for a patient in a long-term care facility." In addition, Connecticut General Statute § 17b-451(a) requires certain mandatory reporters, including individuals paid for caring for an elderly person by a home care agency or companion agency, to report any suspicion or belief that an elderly person has been abused or neglected. The statute further specifies that a mandatory reporter who fails to comply with the statute may be required to retake the training on mandatory reporting, may be required to pay a $500 fine, or may be found guilty of a misdemeanor. *Id.* Relatedly, Connecticut General Statute § 17b-462(a) provides that an abused or neglected elderly person may have a private cause of action against the perpetrator, and that the action may be brought by the elderly person, their guardian, or an organization acting on behalf of and with the consent of the elderly person or their guardian.

9

§ 17a-412 does not appear to apply at all because it specifically pertains to patients in long-term care facilities, not the clients at issue here, elders receiving live-in care in their homes.[5]

Assuming that § 17b-450 *et seq.* would apply here, Defendant has not explained why he is within the class of persons protected by this statutory scheme or that his injury is of the type the statutory scheme was intended to protect. Based on the plain language of the statute, the purpose of this statutory scheme is to protect the elderly; the injuries meant to be protected are the abuse and neglect of elders. *See Salmon v. Dep't of Pub. Health & Addiction Servs.*, 259 Conn. 288, 206 (2002) (noting that the purpose of § 17b-451 is "the protection of the elderly"); *Schler-Hoar v. Trust U/W of Gladys G. Hoart*, No. 3:17-CV-1968 (KAD), 2020 WL 292314, at *8 (D. Conn. Jan. 21, 2020) (explaining that § 17b-451 *et seq.* "sets forth various provisions concerning protective services for the elderly" and affords a private right of action under Conn. Gen. Stat. § 17b-462). Nothing about the plain language of this statute suggests that the statutory scheme was intended to protect home care agencies or prevent inadequate reimbursement for services by the DSS, and Defendant has not identified any legislative history warranting such a conclusion. *See Gore*, 235 Conn. at 380 (explaining that, to decide "whether the legislature intended to provide for" liability *per se*, the court should "look to the language of the statute and to the legislative history" underlying the statute's enactment); *Law v. Camp*, 116 F. Supp. 2d 295, 303 (D. Conn. 2000) (considering the text and legislative history of a statute to determine whether it establishes a duty of care to support a negligence *per se* claim). Moreover, Defendant has not put forth any evidence suggesting that he is authorized to bring a private cause of action on behalf of the allegedly abused

---

[5] In addition, Defendant alleges that T. Mmolawa violated Connecticut General Statutes § 52-595, which does not appear to apply at all. That statute extends the statute of limitations when a person fraudulently conceals the existence of a cause of action from another to whom such person may be liable. Conn. Gen. Stat. § 52-595. Defendant alleges that T. Mmolawa "fraudulently concealed" from Defendant that he abandoned his client, Countercl. ¶ 83, but that statute does not apply merely because T. Mmolawa concealed information. Rather, Defendant has not alleged how T. Mmolawa concealed the existence of a cause of action pursuant to which he would be liable to Defendant, such as to justify extending the limitation period for that cause of action. Thus, § 52-595 has no relevance here.

and neglected clients against Plaintiffs. *See* Conn. Gen. Stat. § 17b-461(a) (permitting a person or organization "acting on behalf of the elderly person" to bring a private action against a perpetrator of elder abuse, with the consent of the elderly person or their guardian).

In sum, Defendant has not identified a statutory violation that, if believed by a jury, would support his negligence *per se* claims, given that none of the statutes he identified were intended to protect a home care agency or protect against the injuries he is alleged to have suffered. Thus, Plaintiffs are entitled to judgment as a matter of law with respect to Defendant's negligence *per se* claims.

## IV.     CONCLUSION

For the reasons set forth above, the Court ORDERS that Plaintiffs are entitled to judgment as a matter of law with respect to Defendant's counterclaims for negligence and negligence *per se* pursuant to Federal Rule of Civil Procedure 56(f). The Court will schedule a status conference to discuss a schedule for trial and pre-trial submissions.

**SO ORDERED** at Hartford, Connecticut, this 27th day of February, 2023.

                          */s/ Sarala V. Nagala*
                          SARALA V. NAGALA
                          UNITED STATES DISTRICT JUDGE