## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MOTLALEPULA MODISE, MORWESI | ) | 3:20-CV-765 (SVN) |
| MMOLAWA, TIRELO MMOLAWA, | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABEL N. OSAGIE, | ) | |
| *Defendant*. | ) | September 12, 2024 |

## RULING AND ORDER ON POST-TRIAL MOTIONS

Sarala V. Nagala, United States District Judge.

Following a six-day jury trial in this matter, the jury returned a verdict in favor of Plaintiffs on their claims that Defendant Osagie undercompensated them for their work as live-in caregivers pursuant to the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-58 *et seq.*, and awarded damages to Plaintiffs on that claim.  The jury also ruled against Plaintiffs on their analogous claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and against Defendant Osagie on his counterclaims for fraudulent and negligent misrepresentation against each Plaintiff.  Following the entry of judgment, Plaintiffs filed a motion to amend the monetary judgment to add prejudgment interest pursuant to the CMWA, and Defendant filed two motions challenging the verdict and other aspects of the trial.

For the reasons discussed below, Plaintiffs' motion is GRANTED and Defendant's motions are DENIED.

## I.     BACKGROUND

This case has a long and somewhat complex procedural history, the relevant parts of which are summarized below.  Plaintiffs, home health care workers who lived with and provided full-time care for their clients, brought suit against Defendant Osagie and their former employer,

CareOne Health Services, LLC ("CareOne"), in June of 2020, alleging claims for violation of the FLSA and CMWA against both Defendants for failure to pay required overtime wages. *See generally* Compl., ECF No. 1. Plaintiffs alleged that Defendants miscalculated their wages, such that they received less than the required 1.5 times their regular rate of pay in overtime pay for all hours worked per week, and that their sleep was often interrupted such that further compensation was owed for sleeping hours. *See id.* ¶¶ 35–43.

Defendant Osagie, appearing *pro se*, then brought four counterclaims against each Plaintiff: (1) negligence; (2) negligence *per se*; (3) negligent misrepresentation; and (4) fraudulent/intentional misrepresentation. *See* Counterclaim, ECF No. 18. The gravamen of the counterclaims was that Plaintiffs did not inform Osagie that they were waking during the night to assist their clients (*i.e.*, working rather than getting the required amount of uninterrupted sleep), as they were required to do, which Osagie claimed caused him and CareOne financial loss. *See generally id.*

Osagie also alleged that Mr. Mmolawa had abandoned his client to attend a court hearing on October 29, 2018, *see id.* ¶¶ 65, 82, which led to his client sustaining injuries, *id.* ¶ 86, and that he abandoned his client a second time on September 14, 2019, to attend a party in New York, after which Mr. Mmolawa got into a car accident, *id.* ¶¶ 88–92. The counterclaim against Mr. Mmolawa made general reference to a workers' compensation claim filed by Mr. Mmolawa when discussing Mr. Mmolawa's abandonment of his client to attend a court hearing on October 29, 2018, *id.* ¶ 65, but did not identify in the fraudulent or negligent misrepresentation claims any specific misrepresentations allegedly made by Mr. Mmolawa in the workers' compensation proceeding that were related to the September 14, 2019, abandonment and car accident. *See id.* ¶¶ 64–78. The negligence counterclaim against Mr. Mmolawa alleged that Mr. Mmolawa "knew he had falsified

his reported services hours by not clocking out when he left the client to go to court resulting in him being paid more than he had worked," *id.* ¶ 98, but likewise did not identify any connection to the alleged misrepresentations made during the workers' compensation proceeding.

As the case proceeded, Defendant Osagie sought to represent CareOne, but was repeatedly informed he could not do so. *See, e.g.*, Order, ECF No. 14; Order, ECF No. 21. Because CareOne never appeared through counsel, the Court entered a default judgment against it. *See* Order ECF No. 21; Ruling and Order, ECF No. 144; Default J., ECF No. 145.

Meanwhile, summary judgment briefing proceeded between Plaintiffs and Defendant Osagie (hereinafter, "Defendant"). In November of 2022, the Court ruled on Defendant's motion for summary judgment, in which he sought summary judgment in his favor as to Plaintiffs' FLSA and CMWA claims and all of his own counterclaims. *See Modise v. CareOne Health Servs., LLC*, 638 F. Supp. 3d 159 (D. Conn. 2022). In its ruling, after concluding that there were genuine disputes of material fact related to Plaintiffs' FLSA and CMWA claims and Defendant's negligent and fraudulent misrepresentation claims, the Court invited Defendant to show cause why it should not grant summary judgment in Plaintiffs' favor on Defendant's negligence counterclaims, given Defendant's failure to allege or prove that Plaintiff owed him a duty of care or that the harm Defendant suffered from Plaintiffs' actions was foreseeable by Plaintiffs. *See id.* at 189–92. It further invited Defendant to show cause why his negligence *per se* counterclaims should not be dismissed, because it did not appear that Defendant was within the class of persons the statutes he invoked sought to protect. *See id.* After receiving responses to the order to show cause, the Court indeed granted judgment as a matter of law on February 27, 2023, in favor of Plaintiffs as to Defendant's counterclaims for negligence and negligence *per se*. *See Modise v. CareOne Health*

*Servs.*, LLC, 658 F. Supp. 3d 44 (D. Conn. 2023).   At no time did Defendant move for reconsideration of that order.

The case thus proceeded to trial on Plaintiffs' FLSA and CMWA claims, and Defendant's fraudulent and negligent misrepresentation counterclaims.  Both parties called numerous witnesses and introduced extensive documentary evidence regarding Plaintiffs' experiences with their clients, Plaintiffs' compensation, and Defendant's compensation practices.  *See* Witness List, ECF No. 210; Exhibit List, ECF No. 211.

In his cross-examination of Mr. Mmolawa, Defendant drew out testimony regarding Mr. Mmolawa's car accident in September of 2019 and his subsequent workers' compensation proceeding, which was dismissed due to Mr. Mmolawa's lack of credibility and a finding that he was not acting within the scope of his employment with CareOne when he got into the car accident. *See* Def.'s Trial Exs. 540 (Connecticut State Police Accident Information Summary and Mr. Mmolawa's Notice of Claim for Compensation with the Connecticut Workers' Compensation Commission), 541 (Order of Dismissal of Workers' Compensation Claim).

On October 31, 2023, before the case was submitted to the jury but after the charge conference, Defendant objected to the proposed jury instructions on the basis that they did not instruct the jury that his fraudulent misrepresentation claim against Mr. Mmolawa included Mr. Mmolawa's alleged misrepresentation, during the workers' compensation proceeding, that he was on work-related duty at the time of the car accident on September 14, 2019.  *See* Order, ECF No. 205.[1]   It became clear through this discussion that Defendant was seeking, through his misrepresentation claims, to recover damages that he had sustained in defending the workers'

---

[1] In relevant part, the jury instructions state that, for both misrepresentation claims, "Mr. Osagie claims that the plaintiffs misrepresented the sleep issues of their clients by (1) affirmatively representing that their clients had no sleep issues, and/or (2) failing to inform him of the fact that their sleep was being interrupted by their clients' needs." *See* Jury Instructions, ECF No. 216 at 24.

compensation proceeding initiated by Mr. Mmolawa.  The Court ruled that Mr. Mmolawa did not have fair notice of the claim for these damages, from either the counterclaim allegations or the testimony that had been adduced at trial regarding the workers' compensation proceeding, which had related primarily to Mr. Mmolawa's credibility and proving the time he had spent (or not spent) with his clients.  *See id.*  The case was submitted to the jury later that day.

The jury deliberated until November 2, 2023, and then returned a split verdict.  First, it found for Defendant on Plaintiffs' FLSA claim.  *See* Verdict Form, ECF No. 208 at 1.  Then, it found in favor of Plaintiffs on their CMWA claim.  *Id.* at 2.  It found that Defendant had not proven a good faith belief that his wage payments were in compliance with the CMWA.  *Id.* at 2–3.  The jury calculated the unpaid overtime compensation for Ms. Modise as $61,940.40, for Mr. Mmolawa as $38,118.00, and for Mrs. Mmolawa as $30,399.60.  *Id.* at 2.  The jury then found in favor of Plaintiffs and against Defendant on his counterclaims.  *Id.* at 3–6.  The jury also found, in response to the Special Interrogatories, that Defendant had maintained sufficient records justifying his food and lodging deductions from Plaintiffs' wages, and that the parties did not have an agreement to exclude sleep time from Plaintiffs' compensable hours.  *Id.* at 6.[2]

Judgment was entered on the jury's verdict; the Court awarded Plaintiffs double damages pursuant to the CMWA.  *See* J., ECF No. 217.  An amended judgment was issued shortly thereafter to reflect the Court's summary judgment rulings in addition to the jury's verdict and the statutory double damages.  *See* First Am. J., ECF No. 222.

---

[2] The jury sent a note with respect to the latter special interrogatory, inquiring whether the agreement referenced in the special interrogatory was required to be in writing.  *See* Court Exhibit List Ex. 4, ECF No. 212.  In discussions on the record occurring on both November 1, 2023, and November 2, 2023, Defendant ultimately made clear that he was only pursuing a theory of written agreement.  Therefore, the Court clarified to the jury that they should answer the special interrogatory as if it had asked whether Plaintiffs and Defendant had a *written* agreement to exclude sleep and meal/free time from Plaintiffs' compensable hours.  The jury answered in the negative.  ECF No. 208 at 6.

Following the conclusion of trial and the entry of judgment in Plaintiffs' favor, the parties filed various motions.

First, Plaintiffs filed a motion pursuant to Federal Rule of Civil Procedure 59(e) seeking the award of prejudgment statutory interest under the CMWA for their unpaid wages at a rate of 12% per year, for the time between November 2019 and November 2023. Pls.' Mot. for Interest, ECF No. 219. Defendant did not respond to Plaintiffs' motion.

Second, Defendant/Counterclaim Plaintiff filed a motion for judgment as a matter of law pursuant to Federal Rules of Civil Procedure 50(b) and 59, requesting that the Court set aside its ruling granting judgment against Defendant and in favor of Mr. Mmolawa with respect to Defendant's counterclaim for negligence and, after doing so, either grant judgment in favor of Defendant with respect to the claim or grant a new trial on the claim. *See* Def.'s Mot. to Amend J., ECF No. 220. Plaintiffs/Counterclaim Defendants oppose this motion, primarily contending that it is an improper motion under either Rule 50 or Rule 59 since Defendant never made a motion for judgment as a matter of law and his negligence claim was never even presented to the jury. *See* Pls.' Opp. to Mot. to Amend J., ECF No. 223.

Third and finally, Defendant filed a motion to dismiss Plaintiffs' claim under the CMWA. *See* Def.'s Mot. to Dismiss, ECF No. 221. He claims that the CMWA claims must be dismissed pursuant to either Federal Rule of Civil Procedure 12(b)(1), because Plaintiffs lack standing to pursue the claims and the Court lacks subject matter jurisdiction to try them, or Federal Rule of Civil Procedure 12(b)(6), because Plaintiffs failed to demonstrate that their pay was not fair compared to similar employees. Plaintiffs oppose this motion on the grounds that the jury's verdict was proper and did not in any way deprive the Court of its jurisdiction over the CMWA claims. Pls.' Opp. to Mot. to Dismiss, ECF No. 224.

Because Defendant's motions go to the propriety of the jury's verdict, the Court addresses Defendant's motions first.  Finding that Defendant's motions must be denied, the Court then turns to Plaintiffs' motion for interest on the jury's award.

## II.     DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

For the reasons discussed below, Defendant's motion to set aside the Court's ruling on the order to show cause and grant judgment in his favor as to his negligence counterclaim against Mr. Mmolawa is denied.

### A.   Legal Standards

One District of Connecticut Local Rule and three Rules of Civil Procedure are relevant here.  First, under District of Connecticut Local Rule 7(c)1, motions for reconsideration of a ruling must be filed and served within "seven days of the filing of the decision or order from which such relief is sought, and must be accompanied by a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked."  A motion for reconsideration should be granted only if the party identifies an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (cleaned up).

Next, pursuant to Federal Rule of Civil Procedure 50, a party may, at "any time before the case is submitted to the jury," make a motion for judgment as a matter of law.  Fed. R. Civ. P. 50(a)(2).  The court may grant the motion if it finds that "a reasonable jury would not have a legally sufficient evidentiary basis" to rule against that party on a particular claim or defense.  *See* Fed. R. Civ. P. 50(a)(1).  If the motion is denied, a party can renew the motion 28 days after the entry of judgment or the discharge of the jury.  Fed. R. Civ. P. 50(b).  Any renewed motion may include a request for a new trial under Rule 59, and the court has discretion to either uphold the jury's verdict,

order a new trial, or enter judgment as a matter of law. *Id.* Because a Rule 50(b) motion is, by its terms, a *renewed* motion, it "can be granted *only on grounds advanced in the preverdict motion.*" *Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012) (emphasis in original) (citing Rule 50 Advisory Committee Note (2006)). This "procedural requirement may not be waived as a mere technicality." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1155 (2d Cir. 1994). And, where the procedural requirement of advancing the grounds for the motion before the case is submitted to the jury is not satisfied, a Rule 50 motion can be granted only to "prevent manifest injustice." *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014).

Separately, Federal Rule of Civil Procedure 59 allows a party to move for a new trial, or to alter or amend a judgment, no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(b), (e). Although Rule 59(a) provides broadly that a court can grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court," the "Second Circuit has held that a district court should grant a motion for a new trial [only] when it finds that 'the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice.'" *See McCarter & Eng., LLP v. Jarrow Formulas, Inc.*, No. 3:19-CV-01124 (MPS), --- F. Supp. 3d ---, 2024 WL 489328 (D. Conn. Feb. 8, 2024) (citing *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)). And a court may grant a motion to alter or amend the judgment under Rule 59(e) only "when the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error prevent manifest injustice." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (citation omitted).

Lastly, a judgment may be vacated or set aside under Federal Rule of Civil Procedure 60(b).[3]  *See Metzler*, 970 F.3d at 143.  This rule provides that a court may order relief from a final judgment or order on the grounds of mistake, newly discovered evidence, or fraud, among others.  Fed. R. Civ. P. 60(b).  Motions under this rule are "generally not favored and [are] properly granted only upon a showing of exceptional circumstances."  *Doe v. Bd. of Educ. of N. Colonie Cent. Sch. Dist.*, No. 23-1035-CV, 2024 WL 3024515, at *1 (2d Cir. June 17, 2024) (summary order) (citing *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001)).

Throughout its discussion below, the Court bears in mind the "strong federal interests in the finality of civil judgments," *see Salamone v. Douglas Marine Corp.*, 111 F.4th 221, 233 (2d Cir. 2024), and also that a *pro se* litigant's filings and motions are liberally construed to raise the strongest arguments they suggest.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *see also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (collecting cases regarding the "special solicitude" afforded to *pro se* litigants).

### B.  Discussion

The thrust of Defendant's argument is that the Court's February 2023 decision granting judgment in Mr. Mmolawa's favor on Defendant's negligence counterclaim, *see* ECF No. 125, must be set aside, and then the Court should (1) enter judgment in Defendant's favor on the counterclaim (in effect altering the jury's award, as this claim was never submitted to the jury), or (2) grant Defendant's motion for a new trial on this claim, either in full or conditionally.  *See* ECF No. 220 at 1.  The Court agrees with Plaintiffs that Defendant's motion must be denied, when considered under any of the relevant Rules.

---

[3] Although Defendant does not invoke Rule 60, this is another basis to set aside a final judgment under which his motion is timely, *see* Fed. R. Civ. P. 60(c), and, in any event, untimely motions for reconsideration may be considered under Rule 60(b).  *See Lora v. O'Heaney*, 602 F.3d 106, 111 (2d Cir. 2010).

**Local Rule 7(c)1.**  As an initial matter, although Defendant has not framed his motion as a motion for reconsideration, it is essentially an untimely motion for reconsideration of the Court's February 27, 2023, decision granting judgment in favor of Mr. Mmolawa as a matter of law on Defendant's negligence counterclaim.  Any such motion was required to have been filed within seven days of the order—March 6, 2023.  D. Conn. Local Civ. R. 7(c)1.  Defendant did not file any motion for reconsideration, much less a timely one.

The Court recognizes, however, that although the decision on Defendant's negligence counterclaim was issued in February of 2023, judgment was not actually entered against him on this claim until November of 2023, *see* ECF No. 222.  And, regardless of whether Mr. Osagie's motion is untimely under Local Rule 7, courts in this district regularly "exercise[] their discretion to review even untimely motions [for reconsideration]."  *See Nesbitt v. Bemer*, No. 3:18-CV-00699 (VLB), 2018 WL 5619716, at *2 (D. Conn. Oct. 30, 2018) (collecting cases).  Even assessing his motion for reconsideration on the merits, however, he has not identified "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Cho*, 991 F.3d at 170.  As described further below, the Court's analysis in its February 2023 remains sound, and Defendant has provided no convincing reasons that would require revisiting it.

**Rules 50 and 59.**  As noted above, Rule 50(a) requires that a party make a motion for judgment as a matter of law "at any time before the case is submitted to the jury."  A party can later renew such a motion, within 28 days of entry of judgment.  *See* Fed. R. Civ. P. 50(b).  Plaintiffs correctly point out that Defendant's motion is not a *renewed* motion under Federal Rule of Civil Procedure 50(b), because Defendant never made an initial motion under Rule 50(a) on *any* ground before the case was given to the jury.  This alone is largely "fatal" to Defendant's

motion. *See Champagne v. Columbia Dental, P.C.*, No. 3:18-CV-01390 (VLB), 2022 WL 168967, at *7 (D. Conn. Jan. 19, 2022) (citing *Cruz*, 34 F.3d at 1155).

Having failed to make a Rule 50(a) motion before the case was submitted to the jury, Defendant can only succeed on his Rule 50(b) motion if there is "manifest injustice" to prevent—meaning that the "jury's verdict is wholly without legal support." *ING Glob.*, 757 F.3d at 97. There is no such manifest injustice here. First, the jury did not pass upon Defendant's negligence claim because judgment as a matter of law was granted well before trial. Accordingly, to the extent the Court must consider whether the *jury's* verdict was incorrect or against the weight of the evidence, Mr. Osagie's motion is not at all targeted to those standards and must be denied on that basis. *See* Fed. R. Civ. P. 50(a) (addressing issues that were "fully heard" during a jury trial); *McCarter*, 2024 WL 489328, at *11–12 (describing standards for evaluating jury's verdict under Rules 50 and 59).

Second, to the extent Defendant uses this post-trial motion to now challenge the Court's February 2023 legal conclusion—that Defendant had not demonstrated Plaintiffs (and Mr. Mmolawa specifically) owed him a duty sufficient to state a claim for negligence—it is likewise denied. As a general matter, a motion for a new trial "is not the proper vehicle for [Defendant] to relitigate the court's summary judgment decision." *See McCarter*, 2024 WL 489328, at *22; *see also Sec. & Exch. Comm'n v. Westport Cap. Markets LLC*, No. 3:17-CV-02064 (JAM), 2020 WL 6270698, at *11 n.48 (D. Conn. Oct. 26, 2020) (noting that without an intervening change in law or facts, "post-trial Rule 50 and 59 motions are not appropriate vehicles for [parties] to seek to relitigate issues long decided against them").

In any event, the Court stands by the reasoning it articulated in granting Mr. Mmolawa (and the other Plaintiffs) judgment as a matter of law on Defendant's negligence counterclaim.

The Court decided, a matter of law, that Mr. Mmolawa did not owe Defendant a duty. *Modise*, 658 F. Supp. 3d at 50. Defendant initially claimed he was harmed because, had Mr. Mmolawa reported his sleep interruptions, Defendant may have been able to classify the client as requiring twenty-four hour care and, as a result, may have been able to receive greater reimbursement from the Connecticut Department of Social Services. *Id.* The Court held that the vagaries of the complex reimbursement scheme were not foreseeable to Plaintiffs. *Id.* Defendant then pivoted to a different theory of harm: that, when Plaintiffs were routinely deprived of sleep, their own health was threatened, such that they were at risk of being injured in the course of their employment. *Id.* The Court held that this theory was far too remote and speculative to be foreseeable to Plaintiffs. *Id.* at 50–51. The Court perceives no manifest injustice in this analysis.

Defendant's latebreaking new misrepresentation theory for Mr. Mmolawa does not change the Court's conclusion. On the last day of evidence, Defendant sought to advance, through a jury instruction, a new theory that Mr. Mmlolawa had made a false representation in the context of his workers' compensation claim about acting in the course of his employment when he was in the car accident, which led Defendant to suffer damages. At the threshold, this new theory was advanced as to Defendant's *misrepresentation* claims, and not as to any *negligence* claims, since the trial did not include Defendant's negligence claims, and therefore is entirely new vis-à-vis his negligence claims. Also, to the extent it was presented to the Court only on the last day of evidence at trial, it is not something that the Court "overlooked" at the time of its February 2023 ruling that would justify reconsidering it or setting it aside. *See Van Buskirk v. United Grp. Of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) (reconsideration justified only when a party can point to "controlling decisions or data that the court overlooked") (citation omitted). The Court also sees no reason to depart from its holding during trial that the counterclaim did not provide sufficient notice to Mr.

Mmolawa regarding this theory of liability.  *See* ECF No. 205.  And although Defendant's theory was somewhat more clearly alluded to in his summary judgment filings, *see* Def.'s Mot. for Summ. J., ECF No. 77-1 at 24–25; Def.'s Statement of Material Facts, ECF No. 100 at 19–20, the Court nonetheless ruled in Plaintiff's favor due to the lack of duty between the parties, and sees no reason to revisit that ruling now.  The time for Defendant to have challenged that legal determination has long since passed.

Finally, the Court notes that, to the extent this theory was raised in his summary judgment filings or at trial, Defendant appeared to claim damages to *CareOne*, not to himself.  *See, e.g.*, ECF No. 77-1 at 25 (claiming Mr. Mmolawa is liable to "Osagie as the assignee of CareOne").  As the Court has already instructed Defendant, he cannot assert any claims on behalf of CareOne given his *pro se* status, even to the extent he is CareOne's assignee.  *See* Order, ECF No. 136 (citing cases, including *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983)).  The negligence claim was therefore legally deficient on this additional ground.

**Rule 60.**  Finally, although Defendant has not invoked Rule 60 in his motion, the Court nonetheless addresses it for good measure.  For the reasons described above, there is no basis to afford Defendant relief from the judgment or the Court's February 27, 2023, order under Rule 60. There is no mistake or surprise; no newly-discovered evidence; no fraud; and no other reason that justifies relief.

In sum, the Court declines the invitation to set aside either its February 27, 2023, ruling on the order to show cause, *Modise*, 658 F. Supp. 3d at 50–51, or its decision regarding the jury instructions, ECF No. 205.  Without setting aside these holdings under Rule 60(b), Defendant has no negligence claim that should have been presented to the jury and therefore there are no grounds for a new trial or to alter the judgment under Rule 50 or 59.  Defendant's negligent and fraudulent

misrepresentation claims were fully and fairly tried to the jury over multiple days.  The jury returned a verdict against Defendant on these claims.  The Court sees no reason to disturb this outcome on the basis of a new and belatedly asserted theory of negligence.  Accordingly, Defendant's motion for judgment as a matter of law, ECF No. 220, is DENIED.

### III.    DEFENDANT'S MOTION TO DISMISS

In his second post-trial motion, Defendant moves to dismiss Plaintiffs' CMWA claims due to lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).  For the reasons discussed below, Defendant's motion is DENIED.

#### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move, in its responsive pleading, to dismiss a case for lack of subject matter jurisdiction.  A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In addition, a court must dismiss an action *sua sponte* if at any time it determines that it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move, in its responsive pleading, to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.

A lack of subject matter jurisdiction may be raised "at any stage in the litigation, even after trial and the entry of judgment."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(h)(3)).  By contrast, an objection that a complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6) "may not be asserted post-trial."  *Id.* at 507.

B. <u>Discussion</u>

Defendant's motion on 12(b)(6) grounds is easily denied, as the objection that a complaint fails to state a claim upon which relief can be granted "endures only up to, not beyond, trial on the merits." *Id.*; *see also* Fed. R. Civ. P. 12(i) (requiring motion brought under Rules 12(b) or 12(c) to be "heard and decided before trial unless the court orders a deferral until trial"). Because Defendant's motion is rejected on this basis, the Court need not address the substance of his claims that Plaintiffs failed to state a claim on the basis that they failed to demonstrate that they were paid less than similarly situated employees. *See* ECF No. 221-1 at 7, 8.[4]

On the other hand, a Rule 12(b)(1) motion can be made at any time, "even after trial and the entry of judgment." *Arbaugh*, 546 U.S. at 506; *see also SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020). Accordingly, the Court proceeds to address Defendant's claim that the Court lacks subject matter jurisdiction over Plaintiffs' CMWA claim.

The Court has previously confirmed its supplemental jurisdiction over Plaintiffs' CMWA claims, given their close relationship with Plaintiffs' federal FLSA claims. *See, e.g.*, ECF No. 144 at 26 n.10. Because the same under-compensation gave rise to Plaintiffs' FLSA and CMWA claims, the Court had no trouble concluding that the two wage-related claims were "so related" that they formed "part of the same case or controversy." *See id.*; 28 U.S.C. § 1367(a).

---

[4] Even if the Court were to reach this argument on its merits, it would reject it. Defendant argues that Plaintiffs "have to plead that the payments that they made were not fair compared to similar employees and provide facts to support this." *See* ECF No. 221-1 at 3–4, 7–8. While it is true that the CMWA refers to a "minimum fair wage," *see* Conn. Gen. Stat. § 31-68(a)(1), and that Connecticut's Labor Commissioner may take into account the wages paid for similar work in *setting* the minimum fair wage, *see* Conn. Gen. Stat. § 31-58(b), the CMWA does not require an employee, in demonstrating he or she was paid less than their required minimum or overtime wages, to prove they were paid at rates less than other similarly situated employees. A plaintiff is entitled to overtime at a rate of "at least one and one-half times *their* regular pay for each hour worked over 40 per week," *see Andrade v. Kwon*, No. 3:08-CV-479 (SRU), 2012 WL 3059616, at *4 (D. Conn. Mar. 26, 2012) (emphasis added)—they need not show that their pay was less than that of anyone else. The standard is objective, not comparative. Thus, Defendant's assertions that CareOne paid more than other similar employers, *see* ECF No. 221-1 at 8, is unavailing.

The question then becomes whether the Court should decline to continue to exercise supplemental jurisdiction over Plaintiffs' CMWA claims now that their FLSA claims have been decided against them.  The Second Circuit is clear that, even after all federal claims have been dismissed before trial, courts may continue to exercise supplemental jurisdiction over state law claims if doing so promotes the values of economy, convenience, fairness, and comity.  *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (vacating and remanding district court's decision to decline supplemental jurisdiction when federal claims were dismissed by the parties just before trial); *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (affirming district court's decision to exercise supplemental jurisdiction after dismissal of federal claims, where case had been pending in federal court for six years).  Here, given that Plaintiffs' FLSA claims were not *dismissed* by the Court, the Court is uncertain of the need to engage in a discretionary analysis regarding its supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c) (courts "may" decline supplemental jurisdiction where "*court* has dismissed all claims over which it has original jurisdiction") (emphasis added).  However, even engaging in this analysis, the Court comfortably concludes that economy, convenience, fairness, and comity weigh in favor of its continued subject matter jurisdiction over Plaintiffs' CMWA claims, given that a jury has already rendered a verdict on them after a thorough trial on both Plaintiffs' FLSA and CMWA claims.

Thus, the Court denies Defendant's motion to dismiss Plaintiffs' CMWA claims on the basis of lack of subject matter jurisdiction.[5]

---

[5] The Court also rejects Defendant's argument that Plaintiffs lack standing to pursue their CMWA claims.  Defendant's argument hinges on his contention that Plaintiffs needed to show they were paid less than other employees in the same industry, and that they needed to show more than the lack of agreement to exclude certain hours from their compensation.  *See* ECF No. 221-1 at 3–4, 5–7.  However, Defendant's merits-based arguments do not go to Plaintiffs' standing, as Plaintiffs clearly alleged and demonstrated an economic injury stemming from Defendant's conduct, which they claimed violated the CMWA.  This is sufficient for standing purposes.  *See, e.g.*, *Kinkead v. Humana at Home, Inc.*, 330 F.R.D. 338, 346 (D. Conn. 2019) (finding plaintiff who alleged violation of New York labor law had standing due to allegation of overtime violations "regardless of the merits of the plaintiff's statutory interpretation") (quoting *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574 n.10 (2d Cir. 2018)).

To the extent Defendant means to argue that the jury's verdict in this case was somehow inconsistent, and thus that a new trial or amended judgment is warranted, the Court also rejects this argument.  As described in the Court's jury instructions, the FLSA and the CMWA have different requirements, such that a split verdict on these counts is not inherently inconsistent.  One such difference, and the one relevant to Defendant's motion, is that while the FLSA does not necessarily require a *written* agreement to exclude sleep time from employee compensation, the CMWA does.  *See* ECF No. 216 at 19, 22*; see also Aboah v. Fairfield HealthCare Servs., Inc.*, No. 3:20-CV-00763 (SVN), 2024 WL 3552413, at *15 (D. Conn. July 26, 2024) (recognizing same distinction between FLSA and CMWA, and citing CMWA cases that have also recognized the written agreement requirement).  As this Court has since squarely held in another case, "[f]ailure to compensate live-in caregivers for sleep time absent a written agreement to do so entitles Plaintiffs to payment of unpaid sleep time under the CMWA."  *See Aboah*, 2024 WL 3552413, at *17.

Here, the jury heard extensive evidence about the agreement, or lack thereof, between the parties regarding sleep time.  They also received instruction on the varying standards under either statute with respect to sleep time agreements.  They were clearly keyed into this distinction since, during their deliberations, they specifically asked for clarification of whether they were being asked to determine whether there was a written agreement to exclude sleep time.

Their verdict reflects their clear understanding of the Court's instructions on the law.  Having found that there was no written agreement to deduct sleep time from wages, the jury likely calculated damages based on multiplying what it calculated to be Plaintiffs' regular or overtime rate of pay by the eight hours of sleep time for which Plaintiffs were uncompensated, times the number of 24-hour shifts the jury found Plaintiffs worked.  Defendant does not challenge the jury's

calculation itself—only its finding that the lack of a written agreement could have led to a CMWA, but not an FLSA, violation. Because that contention is without merit, the Court need not "unravel the plethora of numbers the jury was given" to determine how it arrived at its ultimate damages figure. *Cf. Salamone*, 111 F.4th at 235 (reversing district court's ruling increasing jury award because the jury's damages calculation was rational).

Finally, without expressing any opinion as to whether or not Plaintiffs are undocumented workers, the Court rejects Defendant's suggestion that any award of unpaid wages is inappropriate due to Plaintiffs' undocumented status, or that their undocumented status prevented him from entering into a written agreement with them. *See* ECF No. 221-1 at 4, 8. Although the Supreme Court has held in the context of the National Labor Relations Act that undocumented workers may not be awarded back pay, *see Hoffman Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137 (2002), this holding has not been applied mechanistically in the context of the FLSA or other labor laws. Far from it, in fact—courts regularly hold that immigration law does not bar back pay awards in other contexts. *See, e.g.*, *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 243 (2d Cir. 2006) (recognizing that, post-*Hoffman*, courts have concluded that FLSA awards for undocumented workers were not precluded by immigration laws); *Romero v. Prindle Hill Constr.*, LLC, No. 3:14-CV-01835 (SALM), 2017 WL 3390242, at *2 (D. Conn. Aug. 7, 2017) ("Undocumented workers are not excluded from the protection of the FLSA and similar laws."); *Matysiak v. Shamas*, No. 3:10-CV-01841 (GWC), 2015 WL 4939793, at *4 (D. Conn. Aug. 17, 2015) (noting that, under the CMWA, the "legal rate of pay for a worker does not depend upon his or her immigration status"), *on reconsideration in part and on other grounds sub nom. Rescia v. Shamas*, No. 3:10-CV-01841 (GWC), 2015 WL 11237633 (D. Conn. Dec. 28, 2015). Thus, there is no reason to disturb the jury's judgment or award on the basis of Plaintiffs' immigration status.

Accordingly, Defendant's motion to dismiss is DENIED.  Having resolved Defendant's challenges to the jury's verdict, the Court now turns to Plaintiffs' motion to amend the judgment to award prejudgment interest under the CMWA.

## IV.   PLAINTIFFS' MOTION FOR PREJUDGMENT INTEREST

Plaintiffs move this Court to award prejudgment interest at a rate of 12% per year, and to amend the judgment accordingly, under Federal Rule of Civil Procedure 59(e).  For the reasons that follow, Plaintiffs' motion is GRANTED.

### A.   Legal Standard

A party may request prejudgment interest by way of a Rule 59(e) motion to alter or amend the judgment.  *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175–76 (1989); *Foresco Co, Ltd. v. Oh*, 337 F. Supp. 3d 304, 306 (S.D.N.Y. 2018).   A district court has discretion to add prejudgment interest to a jury award.  *Foresco Co., Ltd.*, 337 F. Supp. 3d at 306.

### B.   Discussion

As a preliminary matter, the Court notes that, although the FLSA generally prohibits the award of both prejudgment interest and liquidated damages, the "CMWA has no such limitation." *See Wei v. Sichuan Pepper, Inc.,* No. 3:19-CV-00525 (JBA) (TOF), 2022 WL 385226, at *14 (D. Conn. Jan. 17, 2022), *report and recommendation adopted sub nom. Wei v. Sichuan Pepper*, No. 3:19-CV-525 (JBA), 2022 WL 382019 (D. Conn. Feb. 7, 2022).  Thus, prejudgment interest is still available to Plaintiffs despite that they have already been awarded liquidated damages under the CMWA.  *See* ECF No. 222 at 2.

There is competing authority on whether an award of 10% or 12% per annum is required for awards of unpaid wages under the CMWA.  As Plaintiffs note in their motion, at least one court in this district has awarded 12% interest based on Conn. Gen. Stat. § 31-72, which authorizes civil

actions for unpaid wages, and incorporates Conn. Gen. Stat. § 31-265, which provides for a minimum interest rate of 12%.  *See Tahirou v. New Horizon Enterprises, LLC*, No. 3:20-CV-00281 (SVN) (TOF), 2023 WL 5934589, at *8 (D. Conn. Aug. 3, 2023), *report and recommendation adopted*, No. 3:20-CV-00281 (SVN), ECF No. 257 (D. Conn. Sept. 18, 2023).  However, as recently noted by another court in this district, "§ 31-72 mentions § 31-265 only in connection with collections by the Labor Commissioner."  *See Crocker v. Elite Energy Consulting, LLC*, No. 3:24-CV-119, 2024 WL 3595904, at *10 (D. Conn. July 31, 2024).  In *Crocker*, in the context of a motion for prejudgment remedy, the court applied the "standard prejudgment interest provisions of [Conn. Gen. Stat.] § 37-3a," which provides for a more discretionary award of prejudgment interest, capped at 10%.  *See id.* (collecting cases that have applied either § 37-3a or §§ 31-72 and 31-265 to unpaid wage claims); *but see Lockhart v. NAI Elite, LLC*, No. HHDCV186098616, 2020 WL 5261242, at *12 (Conn. Super. Ct. Aug. 5, 2020) (finding that, in part because Section 31-72 authorizes the Commissioner to stand in the shoes of the employee, "twelve percent interest is due" on unlawfully withheld commissions), *aff'd*, 209 Conn. App. 308, (2021).

Here, the Court will award interest at a rate of 12% per annum.  The Court finds the reasoning of *Lockhart*, which noted that the Labor Commissioner stands in the shoes of the employee, persuasive for demonstrating that an employee, too, may recover interest on his or her unpaid wages.  *See Lockhart*, 2020 WL 5261242, at *12.  Thus, the Court finds Conn. Gen. Stat. § 31-72 applicable in this action.  In addition, the Court notes that, here, the jury explicitly declined to find that Defendant acted in good faith in paying wages to Plaintiffs, which weighs in favor of awarding interest to Plaintiffs to compensate them for time spent without the compensation legally owed to them.  *See* ECF No. 208; *see also Crocker*, 2024 WL 3595904, at *11 (considering defendant's good faith in declining to award interest as prejudgment remedy); *Strauch v. Computer*

*Scis. Corp.*, No. 3:14-CV-956 (JBA), 2018 WL 5870337, at *7 (D. Conn. Nov. 9, 2018) (considering jury's willfulness finding in awarding prejudgment interest at 10%).  Lastly, the Court notes that Defendant has filed no opposition to Plaintiffs' motion, which "may be deemed sufficient cause to grant" a motion under the Local Rules.  *See* L.R. Civ. P. 7(a)(2).  While the Court does not grant Plaintiffs' motion on this basis alone, it weighs in favor of granting Plaintiffs' request for interest.  *See Strauch*, 2018 WL 5870337, at *7 (noting motion for interest was not opposed and finding 10% interest rate appropriate).

The Court will exercise its discretion to adopt Plaintiffs' proposed midpoint of their employment for purposes of starting date of the interest calculation—November 1, 2019.  *See Wei*, 2022 WL 385226, at *14 (noting that a midpoint may be adopted to avoid having to perform separate calculations for each week in which wages were wrongfully withheld); *Aguilar v. Ham N Eggery Deli Inc.*, No. 15-CV-2781 (KAM) (SMG), 2019 WL 4247228, at *11 (E.D.N.Y. Sept. 5, 2019) (adopting Plaintiffs' proposed midpoint for prejudgment interest calculation under New York law).  As there are 1,778 days between November 1, 2019, and the date of this ruling, September 12, 2024, the Court calculates prejudgment interest as follows.[6]  *See Tahirou*, 2023 WL 5934589, at *8 (calculating damages using similar formula); *Wei*, 2022 WL 385226, at *15 (same).

---

[6] For all three Plaintiffs, the Court calculates prejudgment interest solely on the unpaid wages awarded by the jury, and not on the liquidated damages awarded by the Court.  This is in accordance with Plaintiffs' request, *see* ECF No. 219-1 at 4, although the Court notes that there have been varying approaches to the calculation of prejudgment interest in this district.  *Compare Cabrera v. G.T. Const.*, No. 3:05-CV-812 (MRK) (WIG), 2006 WL 1272618, at *1 n.2 (D. Conn. Mar. 27, 2006) ("Prejudgment interest is awarded only on the unpaid wages, not the additional double damages awarded pursuant to Conn. Gen. Stat. § 31-72."), *report and recommendation adopted*, No. 3:05-CV-812, ECF No. 23 *with Tahirou*, 2023 WL 5934589, at *8 (awarding 12% interest on total award).  Given that the Court has not located controlling authority suggesting that interest should be calculated on the total award, the Court adopts Plaintiffs' proposed approach.  The Court also rounds figures up to the nearest cent in its calculations, and has used the date of this ruling as the date through which prejudgment interest should be calculated.  *See, e.g.*, *Blumenschine v. Pro. Media Grp.*, LLC, No. 3:02-CV-2244 (HBF), 2007 WL 988192, at *13 (D. Conn. Mar. 30, 2007) (calculating interest through date of judgment that awarded prejudgment interest); *see also Hylton v. Gunter*, 313 Conn. 472, 483 (2014) (noting that there is no appealable final judgment under Connecticut law until a court rules on a postjudgment motion for prejudgment interest because prejudgment interest is part of the compensation due to the plaintiff and its determination often involves questions relating to the merits of the underlying action).

For Plaintiff Modise:

| Unpaid Wages | Annual Interest (Unpaid Wages x .12) | Daily Interes (Annual Interest / 365) | Total Interest ($20.36 x 1,778) |
|---|---|---|---|
| $61,940.40 | $7,432.85 | $20.36 | $36,200.08 |

For Plaintiff Tirelo Mmolawa:

| Unpaid Wages | Annual Interest (Unpaid Wages x .12) | Daily Interest (Annual Interest / 365) | Total Interest ($12.53 x 1,778) |
|---|---|---|---|
| $38,118.00 | $4,574.16 | $12.53 | $22,278.34 |

For Plaintiff Morwesi Mmolawa:

| Unpaid Wages | Annual Interest (Unpaid Wages x .12) | Daily Interest (Annual Interest / 365) | Total Interest ($9.99 x 1,778) |
|---|---|---|---|
| $30,399.60 | $3,647.95 | $9.99 | $17,762.22 |

**V.     CONCLUSION**

For the reasons discussed above, Defendant's motions are DENIED and Plaintiffs' motion to amend the judgment to award prejudgment interest is GRANTED.   A Second Amended Judgment shall issue awarding interest in the amounts calculated above.   Plaintiffs may file their motion for attorney's fees and costs pursuant to Conn. Gen. Stat. § 31-72 no later than **September 26, 2024**.

**SO ORDERED** at Hartford, Connecticut, this 12th day of September, 2024.


　/s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE